United States Court of Appeals,

Eleventh Circuit.

No. 94-3067.

UNITED STATES of America, Plaintiff-Appellee,

v.

Raymond Joseph DENALLI, Defendant-Appellant.

Jan. 23, 1996.

Appeal from the United States District Court for the Middle District of Florida. (No. 94-34-Cr-Orl-18), G. Kendall Sharp, Judge.

Before HATCHETT and BIRCH, Circuit Judges, and GODBOLD, Senior Circuit Judge.

PER CURIAM:

Raymond Denalli was convicted on all 21 counts of an indictment, all of which sprang from indignities, outrages, and fraudulent acts committed by Denalli. The victims were the Federles, his next-door neighbors. When the neighbors were away vacationing he entered their residence, poured gasoline throughout, and set it on fire. Firefighters could not control the blaze. The residence, and the Federles' cat, were destroyed.[1] Denalli questions only his conviction under Count 21, under the federal

---

[1] A truck engaged in construction on the Federles' property had passed over the edge of the Denallis' property. Thereafter Denalli began his activities. He obtained a police scanner and eavesdropped on the Federles' telephone conversations. He stole credit cards and other documents from their home. He poured gasoline throughout their garage, glued notes on the windshield of their car, put glue in the car's door locks and placed a corrosive solvent on the car that removed some of the paint. He constructed a pipe bomb, connected it to his van, and called the police reporting that Federle had affixed a bomb to his automobile. He charged items to the credit cards he had stolen and directed some of them be delivered to a post office box he had rented in the Federles' name.

arson statute, which provides:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property *used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce* shall be imprisoned ..., fined ..., or both.

18 U.S.C. § 844(i) (emphasis added). We hold that the evidence did not satisfy the jurisdictional prerequisite of § 844(i), and we reverse the conviction on Count 21 and remand for resentencing.

The federal arson statute expressly requires a jurisdictional prerequisite as an essential element. Congress constructed the statute to exercise the full reach of the federal commerce power. *Russell v. U.S.,* 471 U.S. 858, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985).

The parties concede that the Federles' private residence was not used in interstate or foreign commerce; therefore, this court must only determine if the destruction of the residence affected interstate or foreign commerce.

We review the sufficiency of evidence under the *de novo* standard. *U.S. v. Keller,* 916 F.2d 628, 632 (11th Cir.1990), *cert. denied,* 499 U.S. 978, 111 S.Ct. 1628, 113 L.Ed.2d 724 (1991). We must construe all evidence in a light most favorable to the government, as it prevailed in the district court. *U.S. v. Johnson,* 713 F.2d 633, 661 (11th Cir.1983), *cert. denied,* 465 U.S. 1081, 104 S.Ct. 1447, 79 L.Ed.2d 766 (1984).

The Supreme Court recently considered the scope of federal commerce power in *U.S. v. Lopez,* --- U.S. ----, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), where the Court considered the constitutionality of the Gun-Free School Zone Act. *Id.* at ----,

115 S.Ct. at 1626. The Court examined Commerce Clause jurisprudence and identified three categories of activity that Congress could regulate under the commerce power.

> First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relationship to interstate commerce, those activities that substantially affect interstate commerce.

*Id.* at ---- - ----, 115 S.Ct. at 1629-30 (citations omitted). Congress' regulation of gun-free school zones did not involve the first two categories of Commerce Clause regulation, so the Court analyzed the third category. *Id.* at ----, 115 S.Ct. at 1630. The Court concluded that the analysis under the third category must determine "whether the regulated activity "substantially affects' interstate commerce." *Id.*

The Court focused on the fact that the gun-free zone law was a criminal statute[2] that had nothing to do with commerce. *Id.* at ----, 115 S.Ct. at 1630-31. The Court found no substantial connection between interstate commerce and the statute. *Id.* at ----, 115 S.Ct. at 1634. It held the Gun-Free School Zone Act unconstitutional because Congress exceeded the scope of the federal commerce power.

*Lopez* did not consider the federal arson statute at issue

---

[2]One of the principal tenets of our federal system is that the "States possess primary authority for defining and enforcing the criminal law." *Id.* at ---- n. 3, 115 S.Ct. at 1631 n. 3; *Brecht v. Abrahamson,* 507 U.S. 619, ----, 113 S.Ct. 1710, 1720, 123 L.Ed.2d 353 (1993) (quoting *Engle v. Isaac,* 456 U.S. 107, 128, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982)).

here, but it placed a limit on the federal commerce power. Justice Bryer, dissenting, noted that the new restrictive reading of the Commerce Clause could impact the analysis of the federal arson statute. *Id.* at ----, 115 S.Ct. at 1664.

In *U.S. v. Pappadopoulos,* 64 F.3d 522 (9th Cir.1995), the Ninth Circuit recently applied the *Lopez* rationale in a case involving the federal arson statute. The Court concluded that the federal arson statute was similar to the gun-free school zone statute in that neither statute regulated commercial or economic activity. *Id.* at 526-27. The court described the limit that *Lopez* placed on the federal commerce power.

> *Lopez* makes it clear that the *Wickard* [*v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942) ] line of cases "may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government."

*Id.* at 526-27. (quoting *Lopez,* --- U.S. at ---- - ----, 115 S.Ct. at 1628-29). The Ninth Circuit held that the destruction of the house did not affect interstate commerce, because the only connection the house had to interstate commerce was a natural gas line. *Id.* at 528-29.

Other courts have used *Lopez* to examine other federal criminal statutes. *See U.S. v. All Assets of G.P.S. Automotive Corp.,* 66 F.3d 483 (2d Cir.1995) ("And the Supreme Court's decision earlier this year in *U.S. v. Lopez,* --- U.S. ----, 115 S.Ct. 1624, has similarly revealed the Court's willingness to give serious and renewed thought to issues of federalism at the foundation of our constitutional system, and to do so in the context of the enormous

expansion of federal criminal law").  *Contra U.S. v. Sherlin,* 67 F.3d 1208, 1213-14 (6th Cir.1995) (in its jurisdictional analysis under the federal arson statute the court distinguished *Lopez* by concluding that the gun-free school zone law did not contain a jurisdictional element.)[3]

*Lopez* required the government to prove that the destruction of the Federles' private residence had a substantial effect on interstate commerce.  It failed to make this showing.

Federle was an electrical engineer for Harris Corporation, a company that engaged in interstate and international business.  Harris worked on various projects for the Canadian government.  Federle maintained an office in his private residence equipped with a personal computer, which he used about once a week to prepare memoranda relating to his position at Harris.  Harris did not require Federle to maintain an office at home, and it did not require him to create the memoranda at home.  Federle's computer was not linked to any Harris computer.  It was not equipped with a modem.  It had no link to interstate phone lines or other interstate connections.  The memoranda were not incorporated by disks or other electronic means to any Harris computers.  Federle would print the memoranda on his personal printer and physically carry them to employees at Harris.  He conducted no further activity for Harris at his residence that affected interstate commerce.

---

[3]*Lopez* guided this court's analysis of the scope of the commerce power when considering the constitutionality of the Freedom of Access to Clinic Entrances Act in *Cheffer v. Reno,* 55 F.3d 1517, 1520 (11th Cir.1995).

The government contends that Federle's use of his computer affected interstate commerce because the use concerned international business.  But the evidence did not prove any impact of the memoranda on Harris' contract with the Canadian Government. No substantial effect on interstate commerce was proved.

The conviction under Count 21 is REVERSED and the case REMANDED for resentencing.