United States Court of Appeals,

Eleventh Circuit.

No. 95-8142.

James Alton BELFLOWER, Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

Dec. 3, 1997.

Appeal from the United States District Court for the Middle District of Georgia. (Nos. CV 94-276-3-MAC-WDO), CR 91-29-MAC-WDO), Wilbur D. Owens, Jr., Judge.

Before BLACK, Circuit Judge, and HILL and HENDERSON, Senior Circuit Judges.

PER CURIAM:

Appellant James Alton Belflower appeals the district court's denial of his motion under 28 U.S.C. § 2255, to vacate, set aside, or correct sentence. Belflower asserts, *inter alia,* that the Government failed to establish the interstate commerce nexus required for federal jurisdiction under the federal arson statute, 18 U.S.C. § 844(i). We conclude that the Government satisfied this jurisdictional prerequisite and therefore affirm.

I. BACKGROUND

On Sunday, February 24, 1991, deputy sheriff John Thrower of the Bleckley County Sheriff's Department prepared to leave home for patrol duty. Deputy Thrower went to his car, a 1989 Crown Victoria owned by the Sheriff's Department, cleaned it, placed sheriff's decals on its sides, and mounted his radar unit. At approximately 12:30 p.m., Deputy Thrower entered his car and turned the ignition key. When the key hit the first accessory mode, a bomb attached to the vehicle exploded, lifting the car off the ground and causing extensive damage to the vehicle.

Agents from the Bureau of Alcohol, Tobacco & Firearms (ATF) arrived at the scene and

secured evidence from the site. Knowing that several confrontations had occurred between Thrower and Belflower prior to the bombing, ATF agents also went to Belflower's residence to question him. Those agents discovered incriminating evidence outside Belflower's home. Tests revealed that several items found at Belflower's residence were consistent with the evidence gathered at the bomb scene. At trial, the Government presented additional evidence and testimony which implicated Belflower.

On November 19, 1991, a jury found Belflower guilty on all counts of a four-count indictment charging him with the following: (1) maliciously damaging and destroying and attempting to destroy by means of an explosive, a vehicle used in interstate commerce, in violation of 18 U.S.C. § 844(i) (Count I); (2) using a destructive device during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1) (Count II); (3) receiving and possessing a destructive device that was not registered with the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d) (Count III); and (4) manufacturing an explosive pipe bomb, in violation of 26 U.S.C. § 5861(f) (Count IV).

On March 5, 1992, Belflower was sentenced to imprisonment.[1] Judgment was entered on March 9, 1992. Belflower filed a notice of appeal on March 13, 1992, and this Court affirmed Belflower's conviction on October 22, 1993.

On June 30, 1994, Belflower filed a *pro se* Petition for Correction and/or Modification of Imposed Term of Imprisonment, pursuant to 18 U.S.C. § 3742(f). The district court construed this petition as a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. In his petition,

---

[1]Belflower was sentenced to 121 months' imprisonment on Count I, 15 months' imprisonment on Counts III and IV to run concurrently with each other and consecutive to Count I, and 360 months' imprisonment on Count II to run consecutive to Counts I, III, and IV. In addition, the court sentenced him to a five-year term of supervised release and required him to pay the mandatory assessment fee for each count.

Belflower asserted, among other claims,[2] that the trial court lacked jurisdiction because the Government failed to establish the interstate commerce nexus required by 18 U.S.C. § 844(i).

## II. DISCUSSION

Belflower argues that pursuant to *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), and *United States v. Denalli,* 73 F.3d 328 (11th Cir.), *modified,* 90 F.3d 444 (11th Cir.1996), the Government was required to prove that Deputy Thrower's automobile was used in an activity affecting interstate or foreign commerce. Belflower further asserts that the Government failed to satisfy this jurisdictional prerequisite. We disagree.

In *Russell v. United States,* 471 U.S. 858, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985), the Supreme Court considered the scope of § 844(i)[3] in a case involving the attempted arson of a two-unit apartment building. The Court examined the text of § 844(i) and concluded that the statute "expresses an intent by Congress to exercise its full power under the Commerce Clause." *Id.* at 859, 105 S.Ct. at 2456. The *Russell* Court also considered the legislative history of § 844(i) and noted that "after considering whether the bill as originally introduced would cover bombings of police stations or churches, the bill was revised to eliminate the words "for business purposes' from the description of covered property." *Id.* at 860-61, 105 S.Ct. at 2456-57 (footnote omitted). The Court

---

[2]In addition to the jurisdictional claim, Belflower's petition raised the following claims: (1) his sentence resulted from an impermissible pyramiding of penalties for the same offense; (2) he received ineffective assistance of counsel; (3) the evidence admitted at trial was insufficient to sustain a conviction; (4) the court admitted evidence at trial that was obtained as a result of an illegal search and seizure; and (5) prosecutorial misconduct. After carefully considering these claims, we affirm the district court. *See* 11th Cir. R. 36-1.

[3]Section 844(i) provides:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned ... fined ..., or both....

concluded that "the legislative history suggests that Congress at least intended to protect all business property, as well as some additional property that might not fit that description, but perhaps not every private home." *Id.* at 862, 105 S.Ct. at 2457.

A decade later, the Supreme Court held in *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), that Congress exceeded its Commerce Clause power in enacting the Gun-Free School Zone Act. After outlining the three broad categories in which Congress may regulate commerce, the Court focused its inquiry upon "whether the regulated activity "substantially affects' interstate commerce." *Id.* at 559, 115 S.Ct. at 1630. The Court concluded that the Gun-Free School Zone Act failed to satisfy this requirement because the terms of the statute indicated that it had "nothing to do with "commerce' or any sort of economic enterprise." *Id.* at 561, 115 S.Ct. at 1630-31.

In the two years since the Supreme Court decided *Lopez,* this Court has considered several challenges to federal statutes enacted under Congress's Commerce Clause power, including the felon-in-possession statute, *see United States v. Chisholm,* 105 F.3d 1357 (11th Cir.1997); *United States v. McAllister,* 77 F.3d 387 (11th Cir.1996); the Hobbs Act, *see United States v. Castleberry,* 116 F.3d 1384 (11th Cir.1997); and the federal arson statute, *see United States v. Chowdhury,* 118 F.3d 742 (11th Cir.1997); *United States v. Utter,* 97 F.3d 509 (11th Cir.1996); *United States v. Denalli,* 73 F.3d 328 (11th Cir.), *modified* 90 F.3d 444 (11th Cir.1996). In none of these cases did this Court determine that the challenged statute exceeded Congress's Commerce Clause power. In only one case, *Denalli,* did this Court find that the government failed to satisfy the interstate commerce nexus required for federal jurisdiction. *Denalli,* 73 F.3d at 330-31.

The defendant in *Denalli,* Raymond Denalli, had been convicted under § 844(i) for burning down the home of his neighbors, the Federles. *Id.* at 329. Pursuant to the Supreme Court's holding

in *Lopez,* this Court considered whether "the [Federles'] residence was used in any activity affecting interstate or foreign commerce." *Denalli,* 90 F.3d at 444. The only evidence offered by the Government to satisfy this requirement showed that Mr. Federle occasionally produced memoranda on his personal computer which he printed out at home and hand delivered to co-workers at his place of employment, a corporation engaged in international business. *Denalli,* 73 F.3d at 330-31. This Court found such evidence insufficient to establish the interstate commerce nexus required by § 844(i) and therefore reversed Denalli's conviction.

Belflower argues that under the standard articulated in *Denalli,*[4] the Government failed to establish that Deputy Thrower's automobile was used in an activity affecting interstate or foreign commerce. In particular, Belflower contends that because patrolling and other law enforcement activities are not commercial, they do not have an effect on interstate commerce. However, categorically labeling a police vehicle as non-commercial does not preclude it from being used in an activity that affects interstate commerce. As the Supreme Court noted in *Russell,* the legislative history of § 844(i) indicates that Congress enacted the statute without the language "for business purposes" with the specific intent of bringing police stations and churches within the scope of the statute. *Russell v. United States,* 471 U.S. 858, 860-61, 105 S.Ct. 2455, 2456-57, 85 L.Ed.2d 829 (1985). *Lopez* does not affect the *Russell* Court's analysis on this point because § 844(i) still requires

_____

[4]We recognize that there is disagreement over whether the analysis applied by this Court in *Denalli* is consistent with other precedent in this circuit applying *Lopez,* even with respect to subsequent cases interpreting § 844(i). If one interprets *Denalli* to stand for the principle that the government must prove in each case a substantial effect on interstate commerce, then some degree of tension may exist. However, *Denalli* turned on the government's complete failure to proffer evidence indicating anything more than a *de minimus* effect. In this light, *Denalli* simply seems to represent the unusual and rare case envisioned by the Supreme Court when it recognized that "perhaps not every private home" will fall within the scope of § 844(i). *Russell v. United States,* 471 U.S. 858, 862, 105 S.Ct. 2455, 2457, 85 L.Ed.2d 829 (1985). In the present case, we need not resolve this issue because even if one interprets *Denalli* to require a finding of substantial effect in each case, we conclude the Government satisfied that standard here.

that non-commercial buildings or vehicles be "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." 18 U.S.C. § 844(i).

In the present case, the 1989 Crown Victoria was used by Deputy Thrower in the performance of his law enforcement duties. Although Thrower is the designated narcotics officer for Bleckley County, he also patrols traffic and performs other duties because the Sheriff's Department is small. Thus, Thrower has patrolled traffic on Interstate 16 and other roads within Bleckley County. Of the people to whom he issues traffic citations, Thrower estimated that twenty to thirty percent are from out of state. Thrower has also participated in interstate narcotics investigations and has made several drug arrests on the interstate. When Thrower stops a person or vehicle on the street, he usually runs the identity of the person or vehicle through computers to determine if such individual or vehicle is wanted by state or federal authorities. In the course of his duties, Thrower has arrested individuals who lived outside Georgia, has recovered stolen property outside of the state, testified as a witness in out of state cases, and has attended law enforcement training sessions outside Georgia. These facts clearly demonstrate that Thrower's law enforcement duties have a significant impact on interstate commerce.

Belflower argues that these facts are insufficient because the Government offered no specific evidence to establish that Thrower actually used the 1989 Crown Victoria in undertaking all of the above activities. Belflower's argument misconstrues the focus of the analysis required in the present case. Whether Thrower actually used the 1989 Crown Victoria to perform every one of his duties is not determinative. The determinative factors are that Thrower used the automobile in the performance of his law enforcement duties and that the performance of those duties clearly

represents an activity affecting interstate commerce.[5]

### III. CONCLUSION

The evidence proffered by the Government in the present case establishes that the 1989 Crown Victoria which Belflower attempted to destroy was used in an activity affecting interstate or foreign commerce. We therefore conclude that the Government satisfied the jurisdictional prerequisite of § 844(i).

AFFIRMED.

---

[5]We note that our holding is limited to the facts of this case and does not establish a categorical rule that law enforcement is *per se* an activity that affects interstate or foreign commerce. Such a rule would contradict the clear lesson of *Lopez,* which "reminds us of the necessity of a case-by-case inquiry." *United States v. Chowdhury,* 118 F.3d 742, 745 (11th Cir.1997).