United States Court of Appeals,

Eleventh Circuit.

Nos. 96-3049, 96-3461.

UNITED STATES, Plaintiff-Appellee,

v.

Mark Dale VISCOME, Defendant-Appellant.

UNITED STATES, Plaintiff-Appellee,

v.

Samuel Joseph GENTILE, Defendant-Appellant.

June 26, 1998

Appeals from the United States District Court for the Middle District of Florida. (No. 96-4-CR-T-25(E), Henry L. Adams, Jr., Judge.

Before COX and HULL, Circuit Judges, and KRAVITCH, Senior Circuit Judge.

HULL, Circuit Judge:

Appellants Mark Dale Viscome and Samuel Joseph Gentile appeal their convictions and sentences for various firearms and explosives offenses. After review, we affirm.

## I. FACTS

Appellant Gentile was involved in a bitter custody fight with his estranged wife. Gentile planned to kill his wife by planting a bomb under her work vehicle and approached Appellant Viscome about making a bomb.[1] Viscome agreed to make the bomb and Gentile gave him money to purchase the necessary components. Viscome later assembled the bomb with Gentile's assistance.

After assembling the bomb, Appellants Gentile and Viscome drove to the City of Palm

---

[1]Gentile knew that Viscome previously had made bombs. Gentile told Viscome that he needed a bomb because some people were trying to kill him.

Harbor's Parks and Recreation Department, where Gentile's wife was employed as a groundskeeper. Pointing out one of two parked trucks, Gentile stated to Viscome that he wanted to plant the bomb on that truck. The truck Gentile pointed out was the truck his wife always drove. Gentile was unsuccessful in persuading Viscome to plant the bomb and thus attempted to plant the bomb himself. However, Gentile aborted the attempt upon seeing someone nearby. Gentile and Viscome initially hid but subsequently became nervous and left. Afterwards, Gentile again unsuccessfully attempted to persuade Viscome to plant the bomb. Gentile ultimately indicated that he knew someone else who would take care of it for him. Gentile later informed Viscome that "the situation had been taken care of."

The bomb never detonated but was discovered when two Parks Department employees were in the truck and someone alerted them that something was hanging beneath the truck. The occupants observed what appeared to be a bomb and contacted the authorities. Bomb squad officers removed and disassembled the bomb, subsequently confirming that it was capable of exploding with lethal force.

The police learned from an anonymous source that Appellants Gentile and Viscome made and planted the bomb. Shortly thereafter, Gentile and Viscome were arrested.

## II. PROCEDURAL HISTORY

Appellant Viscome pled guilty to, *inter alia,* conspiring to use a weapon of mass destruction against a person in the United States in violation of 18 U.S.C. § 2332a(a)(2), and attempting to damage, by means of an explosive, a vehicle used in an activity affecting interstate commerce in violation of 18 U.S.C. § 844(i).

Appellant Gentile was charged with these same offenses, but pled not guilty and went to trial. The jury convicted Gentile of conspiring to use a weapon of mass destruction against a person in

the United States in violation of 18 U.S.C. § 2332a(a)(2), and attempting to damage, by means of

an explosive, a vehicle used in an activity affecting interstate commerce in violation of 18 U.S.C.

§ 844(i).[2]

## III. DISCUSSION

A. *Gentile's § 844(i) Conviction*

Appellant Gentile contends that the government presented insufficient evidence that the

truck under which the bomb was planted was used in an activity affecting interstate commerce for

purposes of § 844(i).[3]  Section 844(i) proscribes damaging, by means of fire or an explosive, any

vehicle used in interstate commerce or in an activity affecting interstate commerce, as follows:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of
> fire or an explosive, any building, vehicle, or other real or personal property used in
> interstate or foreign commerce or in any activity affecting interstate or foreign commerce
> shall be imprisoned ..., fined ..., or both....

18 U.S.C. § 844(i).  This statute creates a two-prong test for criminal liability.  Gentile was indicted

and convicted under the second prong of § 844(i) on the theory that the truck that he attempted to

bomb was used "in an activity affecting interstate or foreign commerce."  *Id.*[4]

Gentile asserts that this court's decision in *United States v. Denalli,* 73 F.3d 328 (11th Cir.),

---

[2]Viscome also pled guilty to, and Gentile also was convicted of, using and carrying a firearm during and in relation to a federal crime of violence in violation of 18 U.S.C. § 924(c)(1). Further, Viscome pled guilty to both making and possessing a destructive device in violation of 26 U.S.C. § 5861, and Gentile was convicted of only possessing a destructive device under that same statute.

[3]In reviewing the sufficiency of the evidence, we consider the evidence in the light most favorable to the government and draw all inferences and credibility choices in favor of the jury's verdict.  *United States v. Castleberry,* 116 F.3d 1384, 1387-88 (11th Cir.), *cert. denied,* --- U.S. ----, 118 S.Ct. 341, 139 L.Ed.2d 265 (1997).

[4]Because Gentile was not indicted under the first prong of § 844(i), we need not decide whether Gentile could have been convicted under that prong on the theory that the truck that he attempted to bomb was "property used in interstate or foreign commerce."  18 U.S.C. § 844(i).

*modified,* 90 F.3d 444 (11th Cir.1996), interprets the Supreme Court's *Lopez* decision as requiring the government to show that the truck was used in an activity that *substantially* affected interstate commerce. In *Denalli,* this court held that a private home destroyed by the defendant was not used in interstate commerce. This court further held that the government must show that the private residence "was used in an activity that had a substantial effect on interstate commerce" in order to convict the defendant under § 844(i). *Denalli,* 90 F.3d at 444. Gentile contends that the government has not met this burden here.

In *Denalli,* this court did hold that a conviction under the second prong of § 844(i) is valid only if the property at issue was used in an activity that had "a substantial effect on interstate commerce." *Id.*[5] However, subsequent to the *Denalli* decision involving a private residence, this court has indicated that if business property is involved, then the property need only have been used in an activity that in the aggregate has a substantial effect on interstate commerce. *United States v. Chowdhury,* 118 F.3d 742, 745 (11th Cir.1997) (per curiam). In *Chowdhury,* this court explained that a "case concerning the destruction of business property, when considered in the aggregate, would have a substantial effect on interstate commerce because business property will almost invariably be an element of a much broader commercial market." *Id.* (citing *Russell v. United States,* 471 U.S. 858, 862, 105 S.Ct. 2455, 2457, 85 L.Ed.2d 829 (1985));[6] *see also United States v.*

---

[5]In *Denalli,* the defendant was convicted under § 844(i) for burning down the home of his neighbors, the Federles. At trial, the government introduced evidence showing that Mr. Federle occasionally used his home computer to produce memoranda printed out at home and hand-delivered to co-workers at Harris Corporation, a company engaged in international business. *See Denalli,* 73 F.3d at 330-31. Because this evidence "did not prove any impact of the memoranda on Harris' contract with the Canadian government," the *Denalli* court concluded that "no substantial effect on interstate commerce was proved." *Id.*

[6]The requirement that business property need only be used in an activity that in the aggregate affects interstate commerce is employed by the Ninth Circuit, which issued the seminal § 844(i) case upon which the *Denalli* court relied. *See Denalli,* 73 F.3d at 330 (citing *United States v.*

*Grimes,* --- F.3d ----, No. 96-2916, slip op. at 2688 (11th Cir. June 8, 1998) (relying on *Russell* for the proposition that the legislative history of § 844(i) indicates that Congress intended to protect all business property).[7]

Other decisions of this court either have recognized possible tensions created by *Denalli* or have suggested that it be limited to its facts. *See Belflower v. United States,* 129 F.3d 1459, 1461 n. 4 (11th Cir.1997) (per curiam) ("We recognize that there is disagreement over whether the analysis applied by this Court in *Denalli* is consistent with other precedent in this circuit applying *Lopez* ...."), *cert. denied,* --- U.S. ----, --- S.Ct. ----, --- L.Ed.2d ---- (1998);[8] *United States v. Chisholm,* 105 F.3d 1357, 1357-58 n. 2 (11th Cir.1997) (per curiam) ("*Denalli* involved a special case: the arson of a private residence."). In the case *sub judice,* however, we do not address either the scope of *Denalli* or any tension created thereby, because even assuming *arguendo* that *Denalli*'s standard applies here, we conclude that government's evidence was sufficient to sustain Gentile's § 844(i) conviction.

The government's evidence showed that the truck at issue here was the subject of an interstate lease at the time of Gentile's attempted bombing. The truck was leased by the City of Palm

---

*Pappadopoulos,* 64 F.3d 522 (9th Cir.1995)); *see also United States v. Gomez,* 87 F.3d 1093, 1096 (9th Cir.1996) (upholding a § 844(i) conviction for bombing a rental apartment because, "when considered in the aggregate, this commercial market undeniably has a substantial effect on interstate commerce.").

[7]Neither *Chowdhury* nor *Grimes* cites *Denalli.*

[8]In *Belflower,* this court examined a sheriff's deputy's law enforcement duties in the aggregate to determine whether his patrol car was used in an activity-namely, his law enforcement duties-that had a substantial effect on interstate commerce. *See id.* at 1462. This court, however, recognized the distinction between commercial and non-commercial property, and did not adopt a broad rule, similar to the one recognized in *Chowdhury,* that law enforcement duties "almost invariably" have a substantial effect on interstate commerce. *Id.* To the contrary, the court expressly declined to "establish a categorical rule that law enforcement is *per se* an activity that affects interstate or foreign commerce." *Id.* at 1462 n. 5.

Harbor, Florida from Ford Motor Company in Atlanta, Georgia. Because interstate truck leasing

is itself a tangible component of interstate commerce, the truck necessarily was used in an activity

that in the aggregate has a substantial effect on interstate commerce. *See Chowdhury,* 118 F.3d at

745; *Denalli,* 90 F.3d at 444. Affirming Gentile's conviction thus poses no risk of "embrac[ing]

effects upon interstate commerce so indirect and remote that to embrace them ... would effectively

obliterate the distinction between what is national and what is local...." *Denalli,* 73 F.3d at 330

(quoting *Pappadopoulos,* 64 F.3d at 526-27). Consequently, the government's evidence satisfied

the interstate nexus element of § 844(i).[9]

---

[9]If this court were not bound by *Denalli,* the government makes a strong argument that the second prong of § 844(i) requires no more than its language indicates: namely, that the property at issue be used in "any activity affecting interstate or foreign commerce." 18 U.S.C. § 844(i). Even a minimal effect on interstate commerce, therefore, would be sufficient.

> *Lopez* imposes no additional requirement. *Lopez* holds simply that Congress may regulate non-economic activity if Congress has a rational basis to determine that the proscribed activity (here, arson) substantially affects interstate or foreign commerce. *See United States v. Lopez,* 514 U.S. 549, 559, 115 S.Ct. 1624, 1630, 131 L.Ed.2d 626 (1995); *cf. United States v. Wright,* 117 F.3d 1265, 1270 (11th Cir.) ("Congress had a rational basis to determine that a total ban on machine guns would have a substantial effect on interstate commerce."), *cert. denied,* --- U.S. ----, 118 S.Ct. 584, 139 L.Ed.2d 422 (1997), *vacated in part on other grounds,* 133 F.3d 1412 (11th Cir.1998). A statute regulating noneconomic activity necessarily satisfies *Lopez* if it includes a "jurisdictional element which would ensure, through case-by-case inquiry," that the defendant's particular offense "affects interstate commerce." *Lopez,* 514 U.S. at 561, 115 S.Ct. at 1631; *see also United States v. Olin Corp.,* 107 F.3d 1506, 1509 (11th Cir.1997).

> The conclusion that *Lopez* does not require an individualized finding of "substantial effect" to sustain a conviction under § 844(i)'s second prong is consistent with the holdings of several other circuits. *See, e.g., United States v. Tocco,* 135 F.3d 116, 123-24 (2d Cir.) (rejecting the contention that *Lopez* requires the government to show a substantial effect on interstate commerce for purposes of § 844(i)), *cert. denied,* --- U.S. ----, 118 S.Ct. 1581, --- L.Ed.2d ---- (1998); *United States v. Hicks,* 106 F.3d 187, 190 (7th Cir.) (holding that § 844(i) requires the government only to "establish a minimal connection between the property at issue and some aspect of interstate commerce ...."), *cert. denied,* --- U.S. ----, 117 S.Ct. 2425, 138 L.Ed.2d 188 (1997); *United States v. Melina,* 101 F.3d 567, 573 (8th Cir.1996) (rejecting the contention that the government must show a "substantial effect" to satisfy the interstate commerce requirement under §

B. *Viscome's § 844(i) Conviction*

Appellant Viscome also attacks the sufficiency of the government's evidence regarding the interstate nexus element. However, Viscome's guilty plea waived all non-jurisdictional defects in the proceedings against him; and Viscome's sufficiency of the evidence challenge is non-jurisdictional. *See United States v. Fairchild,* 803 F.2d 1121, 1124 (11th Cir.1986). In any event, Viscome's contention is without merit for the reasons discussed above regarding Appellant Gentile.

C. *Gentile's § 2332a(a)(2) Conviction*

Appellant Gentile challenges the constitutionality of the version of § 2332a(a)(2) under which he was convicted. Prior to sentencing, Gentile argued for the first time that the version of § 2332a(a)(2) under which he was convicted was unconstitutional.[10] Thus, Gentile did not timely challenge the constitutionality of § 2332a(a)(2) in the district court and, consequently, did not properly preserve this constitutional challenge for appeal. *United States v. Walker,* 59 F.3d 1196, 1198 (11th Cir.1995) (citing FED.R.CIV.P. 30). Nonetheless, this court, in its discretion, may review for plain error issues not preserved below. *Id.* Exercising our discretion, we review Gentile's challenge to § 2332a(a)(2) for plain error.

The version of § 2332a(a)(2) under which Gentile was convicted proscribed, *inter alia,* the

---

844(i)). This conclusion also is consistent with decisions of this court construing other statutes with the same relevant language as § 844(i)-namely, the "activity affecting interstate commerce" language. *See United States v. Castleberry,* 116 F.3d 1384, 1386-87 (11th Cir.1997) (holding after *Lopez* that the interstate nexus element of the Hobbs Act still requires the government to show only a minimal connection to interstate commerce); *United States v. McAllister,* 77 F.3d 387, 390 (11th Cir.) (holding the same regarding § 922(g)(1)), *cert. denied,* --- U.S. ----, 117 S.Ct. 262, 136 L.Ed.2d 187 (1996).

[10]Appellant Viscome never challenged the constitutionality of § 2332a(a)(2) in the district court.

use of weapons of mass destruction against a person within the United States, as follows:

§ 2332a. Use of weapons of mass destruction

(a) Offense.—A person who uses, or attempts or conspires to use, a weapon of mass destruction—

...

(2) against any person within the United States

...

shall be imprisoned for any term of years or for life, and if death results, shall be punished by death or imprisoned for any term of years or for life.

18 U.S.C. § 2332a(a)(2) (1994). In April 1996, Congress amended § 2332a(a)(2) to include an element requiring the government to show in each case that the defendant's conduct affects interstate commerce. *See* 18 U.S.C. § 2332a(a)(2) (Supp. II 1996) (amending 18 U.S.C. § 2332a(a)(2) (1994)).[11]

---

[11]In its current form, § 2332a(a)(2) states as follows:

§ 2332a. Use of weapons of mass destruction

(a) Offense against a national of the United States or within the United States.-A person who, without lawful authority, uses, threatens, or attempts or conspires to use, a weapon of mass destruction ...

...

(2) against any person within the United States, and the results of such use affect interstate or foreign commerce or, in the case of a threat, attempt, or conspiracy, would have affected interstate or foreign commerce

...

shall be imprisoned for any term of years or for life, and if death results, shall be punished by death or imprisoned for any term of years or for life.

18 U.S.C. § 2332a(a)(2) (Supp. II 1996).

Relying primarily on the Supreme Court's decision in *Lopez,* Gentile argues that Congress exceeded its authority under the Commerce Clause in enacting the version of § 2332a(a)(2) under which he was convicted.[12] In *Lopez,* the Supreme Court struck down the Gun-Free School Zones Act ("GFSZA") as exceeding Congress's power under the Commerce Clause. *Lopez,* 514 U.S. at 552, 115 S.Ct. at 1626. In so doing, the Court noted (a) that the GFSZA did not regulate any economic activity, (b) that it contained no interstate nexus requirement to "ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce," and (c) that Congress made no findings regarding the effects of the proscribed activity on interstate commerce. *Id.* at 561-63, 115 S.Ct. at 1630-32.

The version of § 2332a(a)(2) under which Gentile was convicted differed from the GFSZA in one important aspect. In enacting the original § 2332a(a)(2), Congress made explicit findings that the proscribed activity in issue substantially affected interstate commerce, as follows:

> The Congress finds that the use and threatened use of weapons of mass destruction, as defined by subsection (b) of this section, gravely harm the national security and foreign relations interests of the United States, seriously affect interstate and foreign commerce, and disturb the domestic tranquility of the United States.

H.R. CONF. REP. NO. 102-405, at 46 (1991). Considering Congress's experience in regulating explosives and their effects,[13] we accord these findings substantial deference. *See Turner Broad.*

---

[12]Gentile also argues that the fact that Congress, after *Lopez,* amended § 2332a(a)(2) to include an interstate nexus element proves as a matter of law that the original § 2332a(a)(2) was unconstitutional. We disagree. For purposes of determining whether a conviction under a statute is valid, the courts independently must determine whether that statute is constitutional.

[13]*See* Organized Crime Control Act of 1970, 18 U.S.C. §§ 842-43 (prohibiting, among other things, the storage of explosives without a federal permit); 116 CONG. REC. 35,298-99 (1970) (detailing evidence showing the need for federal regulation of explosives and explaining the provisions of a proposed bill designed to achieve that end-the subsequently enacted Organized Crime Control Act of 1970); *Russell v. United States,* 471 U.S. 858, 860 n. 5, 105 S.Ct. 2455, 2457 n. 5, 85 L.Ed.2d 829 (1985) (noting the evidence and hearings leading to the congressional regulation of explosives in 1970); *see also United States v. Kirk,* 105 F.3d 997, 1001-02 (5th

*Sys., Inc. v. Federal Communications Comm'n,* 520 U.S. 180, ----, 117 S.Ct. 1174, 1189, 137

L.Ed.2d 369 (1997) ("In reviewing the constitutionality of a statute, "courts must accord substantial

deference to the predictive judgments of Congress.' ").[14]  Based on these findings, we conclude that

Congress acted within its Commerce Clause authority in enacting the pre-amendment version of §

2332a(a)(2);  thus, the district court did not commit plain error in not declaring § 2332a(a)(2)

unconstitutional.[15]

D. *Viscome's § 2332a(a)(2) Conviction*

While Appellant Viscome also challenges the constitutionality of the original § 2332a(a)(2),

the government contends that Viscome has waived this challenge by virtue of his guilty plea.  We

pretermit the issue regarding whether Viscome waived his challenge to the constitutionality of the

pre-amendment § 2332a(a)(2) because, as discussed above, the district court did not commit plain

---

Cir.) (Higginbotham, J., concurring) (noting that the federal government has regulated explosives heavily for over twenty-five years), *cert. denied,* --- U.S. ----, 118 S.Ct. 47, 139 L.Ed.2d 13 (1997);  *United States v. Dawson,* 467 F.2d 668, 673 (8th Cir.1972) ("There being a rational basis upon which Congress properly could have determined that the misuse of explosive materials is one activity which, as a class, affects commerce, the Government need not specifically allege and prove a connection between interstate commerce and the conduct made criminal by § 842(h).").

[14]*See also Turner Broad. Sys., Inc. v. Federal Communications Comm'n,* 512 U.S. 622, 666, 114 S.Ct. 2445, 2471, 129 L.Ed.2d 497 (1994) (stating that the courts' role is "to assure that, in formulating its judgments, Congress has drawn reasonable inferences based on substantial evidence.").

[15]Gentile also argues that the original § 2332a(a)(2) was impermissibly broad to the extent it covered activities with no effect on interstate commerce.  We do not consider this contention because, as discussed above, Gentile's conduct had the requisite effect on interstate commerce. *See United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 522-23, 4 L.Ed.2d 524 (1960) ("One to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional.").

error in not declaring the original § 2332a(a)(2) unconstitutional.[16]

## IV. CONCLUSION

For the foregoing reasons, Appellants' convictions and sentences are

AFFIRMED.

---

[16]Appellants also contend (1) that there was insufficient evidence to support Appellants' convictions under 18 U.S.C. § 924(c)(1), and (2) that the district court erroneously sentenced them under § 924(c)(1).  Additionally, Gentile contends that (1) the district court abused its discretion by admitting evidence of Gentile's abusive acts toward his estranged wife;  (2) the district court should have declared a mistrial based on an improper jury instruction;  (3) his sentence constituted cruel and unusual punishment;  and (4) the district court at sentencing (a) erred in finding that Gentile's offense involved an offer of money and (b) engaged in impermissible double counting.  Each of these contentions is without merit.