[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 96-3621
Non-Argument Calendar

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
08/31/98
THOMAS  K. KAHN
CLERK

D. C. Docket No. 3:96-CR-21/RV


UNITED STATES OF AMERICA,

Plaintiff-Appellee,


versus


CHRISTOPHER DASCENZO
a.k.a.
Christopher Marcus Dascenzo,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(August 31, 1998)**


Before EDMONDSON, BLACK and HULL, Circuit Judges.

**EDMONDSON, Circuit Judge:**

Defendant-Appellant Christopher Marcus Dascenzo appeals his convictions for various firearms and explosives offenses, violating 18 U.S.C. §844(i), 18 U.S.C. 924(c)(1), and 26 U.S.C. §§5841, 5845, 5861(d), and 5871. Only Defendant's challenges about section 844(i) warrant discussion.[1] No reversible error has been shown; we affirm.

The government introduced evidence that three pipe bombs, comprising the destructive device, were placed by Defendant outside the front gate (near the front door) of a home. One of the three bombs detonated while the bomb squad attempted to render it safe. The resulting explosion destroyed the fence, cracked the concrete area where it detonated, and sent fragments through the wall of the house. The home was

---

[1] Defendant raises several issues on appeal. All lack merit, but most are not discussed in this opinion.

used as a rental property and was being rented when the bomb was found.

Section 844(i) makes it a crime maliciously to damage or destroy, or attempt to damage or destroy, by an explosive, a building "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." Defendant claims that the government failed to present sufficient evidence that the home damaged by the pipe bomb had a sufficient effect on interstate commerce.[2]

In Russell v. United States, 105 S.Ct. 2455, 2457 (1985), the Supreme Court was faced with an issue of statutory construction. In the course of construing section 844(i), the Court took into account that Congress wished to use its full

---

[2]Defendant also claims that the government failed to establish that the pertinent home was rental property. But the government introduced testimony from the owner of the home that he rented the house to others. The government also presented the testimony of the person renting the house at the time of the criminal act. Defendant presented no contrary evidence.

powers under the Commerce Clause. The Court concluded that Congress, in enacting section 844(i), "intended to protect all business property, as well as some additional property that might not fit that description, but perhaps not every private home." Deciding that a two-unit apartment used as a rental property falls within section 844(i), the Supreme Court wrote:

> By its terms, however, the statute only applies to property that is "used" in an "activity" that affects commerce. The rental of real estate is unquestionably such an activity. . . . [T]he local rental of an apartment unit is merely an element of a much broader commercial market in rental properties. The congressional power to regulate the class of activities that constitute the rental market for real estate includes the power to regulate individual activity within that class.

Id.

Because the government in the present case introduced evidence from which a rationale trier of fact could conclude that the building where the bomb was placed was used as a rental property, Russell points to an affirmance. Defendant argues,

however, that <u>United States v. Lopez</u>, 115 S.Ct. 1624 (1995), controls this case.  He says that after <u>Lopez</u> a "substantial effect" on interstate commerce must be proved for the property involved in each criminal act.

In <u>Lopez</u>, the Supreme Court was confronted with a facial challenge to the constitutionality of the Gun-Free School Zones Act.  Thus, by relying on <u>Lopez</u>, Defendant's challenge to the sufficiency of the evidence must necessarily include a constitutional challenge:  Defendant, in effect, challenges the statute's constitutionality as applied to him.[3]  As such, this constitutional challenge is a question of law to be decided by the

---

[3]**Defendant frames his issue as one of sufficiency of the evidence and asserts that he is not challenging the constitutionality of the statute.  But because of his reliance on <u>Lopez</u>, we interpret Defendant, in effect, to be arguing both (1) that insufficient evidence existed upon which the court could conclude that the statute is constitutional as applied to Defendant -- that is, Congress lacked the constitutional authority under the Commerce Clause to apply the statute to Defendant's crime -- and (2) that insufficient evidence existed to satisfy the statutory requirements of section 844(i).**

court.  See United States v. Hicks, 106 F.3d 187, 190 (7th Cir.), cert. denied, 117 S.Ct. 2425 (1997).  And, cases discussing Lopez and relying upon its rationale are necessarily addressing the constitutionality of the statute; Lopez establishes no rules of statutory construction.

## I.  Constitutionality Under Lopez

Lopez was a constitutional law decision.  It struck down the Gun-Free School Zones Act, 18 U.S.C. §992(q)(1)(A), which criminalized the knowing possession of a firearm in a school zone.  Lopez identified three broad categories of activities which Congress could regulate pursuant to the Commerce Clause: (i) the use of channels of interstate commerce; (ii) the instrumentalities of interstate commerce or persons or things in interstate commerce; and (iii) activities having a substantial

relation to interstate commerce.[4]  Id. at 1629-30.  Analyzing

section 992(q) under the third category, the Court concluded that

the activity regulated must "substantially affect" interstate

commerce to be within Congress's power to regulate.  Id. at

1630.  The Supreme Court concluded that Congress exceeded

its Commerce Clause authority in section 922(q) because the

statute "neither regulates a commercial activity nor contains a

requirement that the possession [of the gun] be connected in

any way to interstate commerce."  Id. at 1626 (emphasis added).

Nothing in Lopez challenges Congress's power to regulate

conduct, including non-economic conduct (such as arson), if

Congress has a rational basis to determine that the criminalized

conduct substantially affects interstate or foreign commerce.

---

[4]Cases under section 844(i), given the statute's
language, may fall within either category 2 or 3 of the kind of
regulation permitted under the Commerce Clause:  regulation
of the instrumentalities of interstate commerce or regulation
of activities having a substantial relation to interstate
commerce.  See United States v. Chowdhury, 118 F.3d 742,
745 (11th Cir. 1997).

See id. at 1630.  Post-Lopez challenges to the facial constitutionality of section 844(i) have been rejected, apparently concluding that Congress did have a rational basis for determining that the arson of property used in commerce or in an activity affecting interstate commerce substantially affects interstate or foreign commerce.  See United States v. Grimes, 142 F.3d 1342, 1346 (11th Cir. 1998) (collecting cases).

Also, in contrast to the Gun-Free School Zones Act, the federal arson statute, section 844(i), does contain an element expressly requiring connection to commerce, a connection like that to which Lopez alluded.  By its very terms, section 844(i) is limited to property "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce."  So, it would seem that this statutory element removes section 844(i) from the constraints of the "substantial effect" standard established in Lopez. Lopez's "substantial effect" standard has been said to be inapplicable to other statutes with express

effect-on-commerce requirements similar to section 844(i).[5] <u>See</u>

<u>United States v. Castleberry</u>, 116 F.3d 1384, 1387 (11th Cir. 1997);

<u>United States v. Chisholm</u>, 105 F.3d 1357, 1358 n.3 (11th Cir.

1997); <u>United States v. McAllister</u>, 77 F.3d 387, 390 (11th Cir.

1996); <u>see</u> <u>also</u> <u>United States v. Jackson</u>, 111 F.3d 101 (11th Cir.

1997); <u>Cheffer v. Reno</u>, 55 F.3d 1517 (11th Cir. 1995).

But to support the claim that constitutionally insufficient evidence existed to prosecute him under section 844(i), Defendant cites, in addition to <u>Lopez</u>, this court's decision in <u>United States v. Denalli</u>, 73 F.3d 328 (11th Cir.), <u>modified</u>, 90 F.3d 444 (11th Cir. 1996). In <u>Denalli</u>, the defendant's conviction under section 844(i) was reversed because the government proved no substantial effect of the activity on interstate commerce:

---

[5]**Where a statute includes a requirement that, in each case, some effect on commerce be shown, the Supreme Court's concern in establishing the "substantial effect" standard in <u>Lopez</u> -- that is, that no connection to interstate commerce might exist in a specific case -- is alleviated.**

**Denalli** involved the arson of a private home occupied by its owners.

The decision in **Denalli** rested on the panel's application of **Lopez**. And **Denalli** seems to have read **Lopez** to impose -- for constitutional law purposes -- an additional burden on the government when enforcing legislation founded on Congress's authority to regulate activities that substantially affect interstate commerce: the burden to establish that the property underlying each case was used in an activity that substantially affects interstate commerce.

We doubt **Lopez** requires this additional burden for statutes -- like section 844(i) -- containing an express requirement that the crime or the property involved in the crime be connected in some way to interstate commerce.[6] **See Lopez**, 115 S.Ct. at 1626.

_____

[6] **Lopez**, as a matter of constitutional law, only requires that the entirety of the "activity" regulated by the statute "substantially affect" interstate commerce. **Lopez** does not require a substantial effect on interstate commerce to result from each individual criminal act or from the specific

Addressing other statutes with similar requirements as section 844(i) that an effect on commerce exist, this circuit has consistently, except perhaps in <u>Denalli</u>, considered <u>Lopez</u> inapplicable: <u>Lopez</u> does not affect the constitutionality of statutes which expressly require an effect on commerce as an element of the crime.  <u>See</u>, <u>e.g.</u>, <u>Castleberry</u>, 116 F.3d at 1387;

---

property involved in each criminal act.

Much of the confusion about section 844(i) and the application of <u>Lopez</u> to that statute seems to stem from the use of the term "activity."  In evaluating the connection to interstate commerce in cases involving section 844(i), the term activity can be used in two different contexts: (1) a constitutional law context, and (2) a criminal law, statutory context.

In the constitutional law context, <u>Lopez</u> used "activity" to refer to the entirety of conduct sought to be regulated by Congress in enacting a statute.  In this context, the "activity" regulated by section 844(i) is arson of property used in commerce or used in an activity affecting commerce.  Because section 844(i) requires a connection to commerce, the "activity" regulated by Congress in section 844(i) is clearly within Congress's constitutional authority.

In the criminal law context, section 844(i) itself also expressly uses the term "activity."  But "activity" in the statute is used in a different, narrower sense:  to refer to the actual property impacted on by the criminal act at issue.

**Jackson**, 111 F.3d at 101; **Chisholm**, 105 F.3d at 1358 n.3; **McAllister**, 77 F.3d at 390; **see** **also** **Cheffner**, 55 F.3d at 1520.

In **Denalli**, the court required, before application of section 844(i) to the defendant would be constitutional, a substantial effect on interstate commerce by the criminal act at issue: arson of a private home occupied by its owners.[7] Subsequent section 844(i) cases have acknowledged (but questioned) **Denalli**'s expansive application of the "substantial effect" standard. **See**, **e.g.**, **United States v. Viscome**, 144 F.3d 1365, 1369 n.9 (11th Cir. 1998). We question it, too.

Most important, **Denalli** dealt with a specific set of facts: a purely private residence occupied by its owners. And the decision was that the facts of **Denalli**, as a matter of

---

[7]**Again, we conclude because of the reliance on Lopez, the panel in Denalli was deciding what they saw as an issue of constitutional law and was reviewing the sufficiency of the evidence of effect on commerce for constitutional defects. Lopez did not involve 844(i) and could control no other issue in Denalli.**

constitutional law, could not support a prosecution under section 844(i). That decision may be correct.[8] But whatever our view may be on its correctness, we are bound by the decision. So, in like cases, we will follow it to make sure that like cases have a like result. But the case now before us is different.

Even under Denalli's "substantial effect" standard, section 844(i) was constitutional as applied to Defendant in the case before us. Our case presents a different factual setting than Denalli: here, the arson of rental property. And, rental property, in the aggregate, has a substantial effect on interstate commerce. See generally Russell, 105 S.Ct. at 2457 ("[T]he local rental of an apartment unit is merely an element of a much broader commercial market in rental properties."); see also Chowdhury, 118 F.3d at 744-45; United States v. McMasters, 90 F.3d 1394, 1399 (8th Cir. 1996) (renting house is the sort of

---

[8]Even a minimal effect on commerce may not have been shown in Denalli.

economic activity that might, through repetition elsewhere, substantially affect interstate commerce); cf. Belflower v. United States, 129 F.3d 1459, 1462 n.4 (11th Cir. 1997) ("Denalli simply seems to represent the unusual and rare case envisioned by the Supreme Court [in Russell] when it recognized that 'perhaps not every private home'" will be covered under section 844(i).).

Aggregation of the effects on commerce of a given activity (such as, the renting of property) to determine whether a substantial effect on commerce exists is an approach to Commerce Clause legislation recognized by the Supreme Court. See Lopez, 115 S.Ct. at 1631 (Congress's constitutional authority to regulate an activity will be upheld where the activity "arise[s] out of or [is] connected with a[n act], which viewed in the aggregate, substantially affects interstate commerce.").

The arson of rental property in general has a substantial effect on interstate commerce. Thus, criminalization and punishment of the arson of such property is within Congress's

authority under the Commerce Clause. And, because sufficient evidence shows that the home damaged by Defendant was rental property, Defendant's argument based on Lopez is rejected. The Constitution was satisfied.

## II. Statutory Requirements of Section 844(i)

While the regulated activity may, in the aggregate, be required to have a substantial effect on interstate commerce, this requirement is a condition to section 844(i)'s constitutionality; as such, it presents an issue of constitutional law for the court to resolve but is no element of the crime. See Hicks, 106 F.3d at 190. As a matter of criminal law, the jury need only find what the language of the statute requires to convict: the use of the damaged property in commerce or in an activity affecting interstate commerce. See United States v. Wing, 104 F.3d 986, 991-92 (7th Cir. 1997).

The statute requires that the property involved in the arson have some effect on interstate commerce: no requirement of "substantial effect" is set out.  Our judgment that a conviction for a section 844(i) violation is sustainable with no individualized finding for each act of "substantial effect" finds support in decisions of other circuits.  See, e.g., United States v. Tocco, 135 F.3d 116, 123-24 (2d Cir.), cert. denied, 118 S.Ct. 584 (1998); Hicks, 106 F.3d at 190 (government only required to "establish a minimal connection between the property at issue and some aspect of interstate commerce");  United States v. Melina, 101 F.3d 567, 572-73 (8th Cir. 1996).

Where, as here, the pertinent property is being used as rental property, it fits squarely within the teachings of Russell; sufficient evidence was presented to satisfy the statutory requirement that the property be used in an activity affecting commerce. The criminal law was satisfied. Again, other circuits have reached the same result.  See,  e.g., Tocco, 135 F.3d at 124

(proof that building was rented at time of arson conclusively establishes requisite connection between burned building and interstate commerce); <u>United States v. Gomez</u>, 87 F.3d 1093, 1094 (9th Cir. 1996) (acknowledging <u>Russell</u>'s per se rule that all rental property sufficiently affects interstate commerce to satisfy section 844(i)).

In addition, the district court's instruction to the jury that, for purposes of the criminal statute, residential rental property "is considered as being used in or affecting interstate commerce even if it has a minimal effect on interstate commerce" is not error. This statement is a correct statement of the statutory requirement under section 844(i).

AFFIRMED.