United States Court of Appeals,

Eleventh Circuit.

Nos. 96-8235, 96-8239.

UNITED STATES of America, Plaintiff-Appellee,

v.

Muazzam Hussain CHOWDHURY, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Randy WILSON, Defendant-Appellant.

Aug. 6, 1997.

Appeals from the United States District Court for the Northern District of Georgia. (No. 1:95cr341-1), Willis B. Hunt, Jr., Judge.

Before BLACK, Circuit Judge, RONEY, Senior Circuit Judge, and BURNS[*], Senior District Judge.

PER CURIAM.

Appellants Muazzam Hussain Chowdhury and Randy Wilson appeal their convictions under the federal arson statute, 18 U.S.C. § 844(i),[1] asserting that their case lacks the interstate commerce nexus required for federal jurisdiction.[2] We affirm, holding that the decision of the Supreme Court's decision in *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), did not limit Congress's power to regulate commercial activity as articulated in *Russell v. United States,* 471 U.S. 858, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985). Pursuant to the principles expressed in *Russell,* we conclude that the Government presented evidence sufficient to satisfy the jurisdictional prerequisite of the federal arson statute.

---

[*]Honorable James M. Burns, Senior U.S. District Judge for the District of Oregon, sitting by designation.

[1]18 U.S.C. § 844(i) provides that: "Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned ... fined ... or both...."

[2]After carefully considering the other arguments raised on appeal, we conclude that they are without merit and do not discuss them. *See* 11th Cir. R. 36-1.

# I. BACKGROUND

Appellant Chowdhury partially owned and operated the Moghul Salute Restaurant (Moghul Salute) located in Decatur, Georgia. In late 1994, employee Mohammed Choudhury left Moghul Salute to open a competing Indian restaurant. Moghul Salute Head Chef, Mohammed Khaliq, planned to join Choudhury at the new restaurant, but delayed his departure until the new restaurant was ready to open.

During a conversation with Appellant Randy Wilson, a Moghul Salute customer, Appellant Chowdhury expressed concern about the competition from the new restaurant. Chowdhury sought Wilson's assistance in a plan to either "shoot up" the new restaurant or to burn it down. Wilson agreed to help Chowdhury. Although they never agreed on a specific fee for the contemplated arson, Chowdhury assured Wilson that money would be no object.

Wilson recruited his uncle, Jessie Lee Hudson, to assist him in burning down the new restaurant. Wilson and Hudson set fire to the restaurant shortly before the scheduled grand opening. The fire completely destroyed the new restaurant and also damaged the roof of an adjacent business.

The Government presented evidence during the trial to establish the interstate commerce element of the offense. The building that housed the new restaurant was part of a shopping center complex owned by a New Jersey partnership. A New Jersey company managed the shopping center. That company was responsible for collecting the lease payments from the businesses located in the shopping center. In addition, one of the restaurant owners, Mohammed Choudhury, had negotiated the terms of the lease through a commercial real estate agent and paid a $1,150 security deposit at the time the lease was closed. In the normal course of business, that security deposit would have been forwarded to the New Jersey management company.

The Government also produced uncontroverted evidence that Mohammed Choudhury obtained a county business license to operate a restaurant at that location. Prior to the scheduled opening, Choudhury opened an account with Sysco Food Services, a company that specializes in providing wholesale restaurant supplies. Choudhury then ordered and received supplies for the new restaurant. Several of the items Choudhury acquired from Sysco Foods Services were produced by

out-of-state manufacturers and delivered to the restaurant prior to the arson.

## II. DISCUSSION

A. *Standard of Review*

We review the sufficiency of the evidence *de novo. United States v. Lyons,* 53 F.3d 1198, 1200 (11th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 350, 133 L.Ed.2d 246 (1995). In doing so, we view all the evidence, and make all logical inferences, in the light most favorable to the Government. *United States v. Waymer,* 55 F.3d 564, 570 (11th Cir.1995).

B. *Satisfaction of Jurisdictional Element*

Appellants challenge the application of the federal arson statute, asserting that the evidence of the interstate commerce nexus was insufficient to satisfy the jurisdictional prerequisite of the statute. *See* 18 U.S.C. § 844(i). Specifically, they argue that *Lopez* overruled the *Russell* Court's conclusion that the federal arson statute protects all commercial property.

In *Russell v. United States,* 471 U.S. 858, 105 S.Ct. 2455 (1985), the Supreme Court construed the coverage of § 844(i) to include a two-unit apartment building that was used as rental property. The Supreme Court noted that "[t]he legislative history [of § 844(i) ] indicates that Congress intended to exercise its full power to protect "business property.' " *Id.* at 860, 105 S.Ct. at 2456. The Court found that "the rental of real estate is unquestionably" an activity affecting interstate commerce. *Id.* at 862, 105 S.Ct. at 2457. "The legislative history of section 844(i) and the Supreme Court's interpretation of that history in *Russell* clearly establish that the "real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce' language of section 844(i) necessarily encompasses any property involved in commercial activity." *United States v. Miller,* 24 F.3d 1357, 1361 (11th Cir.1994); *see also United States v. Medeiros,* 897 F.2d 13, 16 (1st Cir.1990) ("Russell thus holds that rental property is *per se* property used in an activity affecting interstate commerce.").

Ten years after its decision in *Russell,* the Supreme Court considered the constitutionality of the Gun-Free School Zone Act in *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). The *Lopez* Court surveyed Commerce Clause jurisprudence and described

three categories of activity that Congress could regulate under its commerce power. First, Congress may regulate the use of the channels of interstate commerce. *Id.* at 556-59, 115 S.Ct. at 1629. Second, Congress may regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. *Id.* Third, Congress is empowered to regulate those activities that substantially affect interstate commerce. *Id.* at 557-61, 115 S.Ct. at 1629-30. Because the regulation of gun-free school zones did not involve the first two categories of Commerce Clause regulation, the Court analyzed the statute under the third category. *Id.* at 559-61, 115 S.Ct. at 1630. The Court determined that the analysis under the third category must focus upon "whether the regulated activity "substantially affects' interstate commerce." *Id.* The Court concluded that the statute failed this test because "by its terms," it had "nothing to do with "commerce' or any sort of economic enterprise," *id.* at 561, 115 S.Ct. at 1630-31, nor was it "an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *Id.* at 561, 115 S.Ct. at 1631.

Appellants argue that *Lopez* calls into question the conclusion of the *Russell* Court that the federal arson statute invariably protects business property. We disagree. *Russell* remains authoritative precedent. The federal arson statute falls under both the second and third *Lopez* categories of permissible regulation. This categorization is evidenced by the plain language of the statute; the statute protects property that is either "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." 18 U.S.C. § 844(i). Federal protection of commercial property is easily sustained under "cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce." *Lopez* at 561, 115 S.Ct. at 1631.

Appellants further argue that the mere labeling of a property as "business" or "commercial" is not enough. With that contention, we are in accord. The label is irrelevant; *Lopez* reminds us of the necessity of a case-by-case inquiry. Nevertheless, a case concerning the destruction of business property, when considered in the aggregate, would have a substantial effect on interstate

commerce because business property will almost invariably be an element of a much broader commercial market. *See Russell,* 471 U.S. at 862, 105 S.Ct. at 2457; *see also United States v. Hicks,* 106 F.3d 187, 189 (7th Cir.1997) ("[T]he activity regulated by the arson statute is the burning of property used in or affecting commerce, and it doesn't take any fancy intellectual footwork to conclude that the aggregate effect of such arsons on commerce is substantial."), *petition for cert. filed,* (U.S. May 2, 1997) (No. 96-8867).

Precise formulations of the requisite interstate commerce nexus are not possible. *See Lopez,* 514 U.S. at 567-68, 115 S.Ct. at 1634. It is conceivable that the destruction of property no longer intended for commercial use would fail to satisfy the jurisdictional prerequisite. *See United States v. Gaydos,* 108 F.3d 505, 511 (3d Cir.1997) (house that ceased to be rental property before it was destroyed by fire was not protected by the federal arson statute where there was no evidence of an intention to rent the property again). We need not reach the issue of whether all business property is protected, however, because the facts of this case support the commercial use of the property.

At trial, the Government produced at trial evidence sufficient to satisfy the jurisdictional prerequisite many times over. First, the Government established that the commercial building in which Choudhury rented his restaurant space was owned by a New Jersey partnership and that the shopping center was managed by a New Jersey company. In addition, another commercial property in the same mall was damaged by the fire.

Second, several of the items Choudhury ordered and received from Sysco Food Services were produced by out-of-state-manufacturers, thus placing the restaurant in the stream of interstate commerce. *See United States v. Robertson,* 514 U.S. 669, 670-72, 115 S.Ct. 1732, 1733, 131 L.Ed.2d 714 (1995) ("[A] corporation is generally engaged in commerce when it is itself directly engaged in the ... acquisition of goods and services in interstate commerce.") (internal quotation marks omitted).

Finally, had the restaurant opened, it would have been a public restaurant available to serve interstate travelers. *See Katzenbach v. McClung,* 379 U.S. 294, 304, 85 S.Ct. 377, 384, 13 L.Ed.2d 290 (1964) (interstate commerce nexus satisfied where restaurant offers to serve interstate travelers

or serves food a substantial portion of which has moved in interstate commerce).

As we found in *United States v. Utter,* "[u]nder these circumstances the requisite connection to interstate commerce is apparent." 97 F.3d 509, 516 (11th Cir.1996). The evidence was more than sufficient to satisfy the jurisdictional prerequisite of § 844(i).

AFFIRMED.