[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-15619
Non-Argument Calendar

_____

D.C. Docket No. 0:14-cr-60163-WPD-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHAUN ERIC MCKINLEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 12, 2016)

Before MARCUS, JORDAN and JULIE CARNES, Circuit Judges.

PER CURIAM:

Shaun Eric McKinley appeals his convictions and two life sentences for

kidnapping, in violation of 18 U.S.C. § 1201(a), and sex trafficking, in violation of

18 U.S.C. § 1591(a)(1).  On appeal, McKinley argues that: (1) the evidence was

insufficient to convict him of sex trafficking under the Trafficking Victims Protection Act ("TVPA"); (2) the federal kidnapping statute is unconstitutional; (3) the evidence was insufficient to convict him of kidnapping; (4) the district court plainly erred in its evidentiary rulings; (5) the district court abused its discretion in denying him a mistrial; (6) the government engaged in prosecutorial misconduct; (7) the district court abused its discretion in denying him a continuance; (8) the admission of his prior bad acts and the improper impeachment of his witness cumulatively denied him a fair trial; (9) the district court erred in applying an obstruction-of-justice enhancement; (10) his prior Florida convictions for controlled-substance offenses did not qualify as controlled-substance offenses for career-offender purposes; and (11) his sentences were substantively unreasonable. After thorough review, we affirm.

We review the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the jury's verdict. United States v. Martin, 803 F.3d 581, 587 (11th Cir. 2015). A defendant must offer more than a reasonable hypothesis of innocence -- the issue is not whether a jury reasonably could have acquitted, but whether it reasonably could have found guilt beyond a reasonable doubt. Id. We also review the constitutionality of a federal statute de novo. United States v. Jackson, 111 F.3d 101, 101 (11th Cir. 1997). While we typically review de novo claims of

2

prosecutorial misconduct, if a defendant failed to object to the prosecutor's statements before the district court, we review for plain error that is so obvious that failure to correct it would jeopardize the fairness and integrity of the trial. United States v. Merrill, 513 F.3d 1293, 1306-07 (11th Cir. 2008). Plain error is (1) an error, (2) that is plain, and (3) that affects a defendant's substantial rights. United States v. Edouard, 485 F.3d 1324, 1343 n.7 (11th Cir. 2007). If these three prongs are met, we will only correct the error if it "'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" Id. An error affects substantial rights if it "'affected the outcome of the district court proceedings.'" Id.

We review the denial of a motion for mistrial and the denial of a motion to continue trial for abuse of discretion. United States v. McGarity, 669 F.3d 1218, 1232 (11th Cir. 2012); United States v. Valladeres, 544 F.3d 1257, 1261 (11th Cir. 2008). We typically review evidentiary rulings for abuse of discretion, but will review for plain error if a defendant failed to preserve a challenge to an evidentiary ruling by contemporaneously objecting. United States v. Turner, 474 F.3d 1265, 1275 (11th Cir. 2007). Similarly, if a party induced or invited the district court into making an error, we are precluded from reviewing that error on appeal. United States v. Brannan, 562 F.3d 1300, 1306 (11th Cir. 2009).

We review a district court's findings of fact concerning an obstruction-of-justice enhancement for perjury for clear error. United States v. Banks, 347 F.3d

1266, 1269 (11th Cir. 2003). We review <u>de novo</u> the court's decision to classify a defendant as a career offender under U.S.S.G. § 4B1.1. <u>United States v. Gibson</u>, 434 F.3d 1234, 1243 (11th Cir. 2006). We review the sentence a district court imposes for "reasonableness," which "merely asks whether the trial court abused its discretion." <u>United States v. Pugh</u>, 515 F.3d 1179, 1189 (11th Cir. 2008) (quotation omitted). We are bound to follow our binding precedent unless and until we overrule the precedent en banc or the Supreme Court overrules it. <u>United States v. Vega-Castillo</u>, 540 F.3d 1235, 1236 (11th Cir. 2008).

First, we are unpersuaded by McKinley's claim that there was insufficient evidence to convict him of sex-trafficking. To obtain a conviction for sex-trafficking a non-minor, the government must first show that the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained a person by any means. 18 U.S.C. § 1591(a)(1). The government must then prove that the defendant knew or was in reckless disregard of the fact that means of force, threats of force, fraud, or coercion would be used to cause the person to engage in a commercial sex act. <u>Id</u>. Lastly, the government must prove that the offense was in or affected interstate or foreign commerce. <u>Id</u>.

The statute defines "coercion" to include "any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to . . . any person." <u>Id</u>. § 1591(e)(2)(B). "Serious harm" is then

4

defined as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm." Id. § 1591(e)(4).

When a defendant chooses to testify, he runs the risk that, if disbelieved, the jury might conclude that the opposite of his testimony is true. United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995). Thus, a statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of his guilt. Id. Where some corroborative evidence of guilt exists for the charged offense, and the defendant takes the stand in his own defense, the defendant's testimony denying guilt may establish, by itself, elements of the offense. Id. at 314-15. This rule applies with special force where the elements to be proved for a conviction include highly subjective elements, such as intent or knowledge. Id. at 315. Credibility determinations are the exclusive province of the jury, and will not be disturbed unless testimony the jury relied on was incredible as a matter of law. United States v. Thompson, 422 F.3d 1285, 1291-92 (11th Cir. 2005). To be incredible as a matter of law, testimony must be unbelievable on its face. Id. at 1291.

McKinley claims there was no evidence that he forced or coerced Ashlee Wilson to engage in a commercial sex act because she worked in prostitution

5

before he met her and she voluntarily engaged in a joint commercial-sex-trafficking venture with him.  However, sufficient evidence showed that McKinley knowingly harbored Wilson by the use of force, threats of force, and coercion in order to force her to perform commercial sex acts.  Wilson herself testified that McKinley engaged in threats and violence to scare her to stay with him and keep performing commercial sex.  For example, after an escape attempt, McKinley "hog-tied" her naked and beat her with a board.  She said she felt required to follow his orders, because the alternative "wouldn't be good for [her]."  Her testimony was corroborated by witness Shaquille Antonio, who said that McKinley had bragged to him that he had beaten Wilson so that she would not escape again.  The only evidence directly rebutting Wilson's testimony was McKinley's own denial, but the jury was entitled to disbelieve his testimony and use it as evidence of his guilt.  Moreover, the fact that Wilson worked as a prostitute before meeting McKinley does not excuse his responsibility under the statute for compelling her to "continue performing commercial sexual activity."  See 18 U.S.C. § 1591(e)(4).

We also reject McKinley's constitutional challenge to the federal kidnapping statute.  As a general rule, a facial constitutional challenge can succeed only if the law is unconstitutional in all of its applications.  See Horton v. City of St. Augustine, Fla., 272 F.3d 1318, 1329 (11th Cir. 2001).  We will only invalidate a

6

congressional enactment upon a plain showing that Congress has exceeded its constitutional bounds.  United States v. Morrison, 529 U.S. 598, 607 (2000).

Under its commerce power, Congress may permissibly regulate the channels and instrumentalities of interstate commerce, as well as activities having a substantial effect on interstate commerce.  U.S. Const. art. I, § 8, cl. 3.; United States v. Lopez, 514 U.S. 549, 559-60 (1995).  In Lopez, the Supreme Court held that the Gun-Free School Zones Act -- which criminalized possession of a firearm in a school zone -- was an unconstitutional exercise of Congressional authority because the Act neither regulated commercial activity nor required the possession to be connected to interstate commerce.  514 U.S. at 551.  Notably, however, in reaching this conclusion, Lopez held it dispositive that the statute contained "no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce."  Id. at 561.  Based on Lopez, we've held that the express jurisdictional elements of a number of statutes defeated facial challenges to their constitutionality.  See United States v. Drury, 396 F.3d 1303, 1311 (11th Cir. 2005) (murder-for-hire); United States v. Castleberry, 116 F.3d 1384, 1387 (11th Cir. 1997) (Hobbs Act); United States v. Chowdhury, 118 F.3d 742, 745 (11th Cir. 1997) (federal arson); United States v. McAllister, 77 F.3d 387, 389-90 (11th Cir. 1996) (felon-in-possession-of-firearm).

The federal kidnapping statute at issue here prohibits the kidnapping of any person when an instrumentality of interstate commerce is used "in committing or in furtherance of the commission of the offense." 18 U.S.C. § 1201(a)(1). Thus, unlike the statute invalidated in Lopez, the kidnapping statute contains an express jurisdictional element that ensures that the statute only reaches kidnapping furthered by the instrumentalities of interstate commerce. See Lopez, 514 U.S. at 559-60; United States v. Morgan, 748 F.3d 1024, 1032 n.9 (10th Cir. 2014) (persuasive authority) (noting failures of constitutional challenges to kidnapping statute). The federal kidnapping statute, therefore, is not facially constitutional.

Next, we find no merit to McKinley's argument that there was insufficient evidence that he used instrumentalities of interstate commerce in furtherance of his kidnapping offense. To sustain a conviction under the federal kidnapping statute, there must be sufficient evidence that the defendant kidnapped any person and that he used an instrumentality of interstate commerce "in committing or in furtherance of the commission of the offense." 18 U.S.C. § 1201(a)(1). Cellular telephones are instrumentalities of interstate commerce. United States v. Evans, 476 F.3d 1176, 1180-81 (11th Cir. 2007). Therefore, the use of cell phones, even without evidence that the calls were routed through the interstate system, sufficiently satisfies the use of interstate commerce element of an offense. Id.

The evidence adduced at trial shows that McKinley used his cell phone before and during Wilson's kidnapping. Indeed, McKinley used his cell phone to communicate with Chuwan Evans, an individual who set up a "date" with Wilson so that McKinley could kidnap her. McKinley also spoke to Evans on his cell phone while he was following him to find a non-public place to commit the kidnapping. Because sufficient evidence demonstrated that cell phones were used in furtherance of kidnapping Wilson, and, therefore, supported McKinley's conviction, the federal kidnapping statute was constitutional as applied to him.

Similarly, we reject McKinley's claim that the district court erred in admitting evidence about his involvement with drugs and guns, a prior drug conviction, and testimony that he hit someone with a brick. The Federal Rules of Evidence prohibit the admission of evidence of other crimes, wrongs, or acts to show a defendant's character in order to prove action in conformity with his character, though this evidence may be admitted for other purposes. Fed. R. Evid. 404(b). Rule 404(b), however, deals only with the admissibility of evidence extrinsic to the charged offenses; the rule does not cover intrinsic evidence. Edouard, 485 F.3d at 1344. Evidence is intrinsic if it is: (1) an uncharged offense arising out of the same series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense. Id. Intrinsic evidence must nevertheless satisfy

9

Rule 403's probative-value/prejudice weighing test. Id. at 1344 & n.8. Evidence is inextricably intertwined with evidence of the charged offense when it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted. Id. at 1344. We've said that evidence of activities that occurred before the charged offense is admissible if it pertains to a chain of events forming the context, motive, and set-up of the crime. United States v. Lehder-Rivas, 955 F.2d 1510, 1516 (11th Cir. 1992).

In this case, the district court did not plainly err in admitting testimony of McKinley's drug activities, since the testimony was intrinsic to the chain of events forming the context and set-up of his sex-trafficking and kidnapping offenses.[1] Nor was there plain error when the government referenced McKinley's "last" prior conviction, since the questioning was meant to resolve McKinley's apparent confusion about which of his drug activities was the subject of the government's questioning. Finally, testimony concerning McKinley's brick attack was necessary to complete Wilson's story and prove that McKinley forced her into performing commercial sex acts. The district court, therefore, did not plainly err or abuse its discretion in denying McKinley's motion for mistrial on these grounds.

---

[1] Because McKinley did not object to the admission of evidence relating to his drug activities or his "last conviction," we review those claims for plain error. McKinley did object to evidence relating to his attack with the brick, and, we review that claim for abuse of discretion.

10

We also reject McKinley's claim that the district court abused its discretion by denying his motions for mistrial during a defense witness' cross-examination. The grant of mistrial is warranted only if a defendant shows "substantial prejudice," United States v. Chastain, 198 F.3d 1338, 1352 (11th Cir. 1999), which is a reasonable possibility that, but for the improper remarks or evidence, the trial outcome would have been different, United States v. Emmanuel, 565 F.3d 1324, 1334 (11th Cir. 2009). The district court is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury. Id. We've held that the admission of inadmissible evidence did not affect the outcome of a jury verdict when there was overwhelming evidence of the defendant's guilt. United States v. Phaknikone, 605 F.3d 1099, 1109 (11th Cir. 2010).

McKinley claims that the government improperly impeached a defense witness with extrinsic evidence of drugs and guns, but he has not shown that these references during a single defense witness's cross-examination would have exerted a substantial impact on the jury's verdict and affected the outcome of his trial. As the record shows, the government introduced overwhelming evidence of McKinley's guilt, including consistent testimony from multiple witnesses, surveillance videos of McKinley's actions, and photographs and other records of McKinley's activities. Accordingly, we affirm the district court's denial of his motions for a mistrial concerning this evidence.

11

Next, we disagree with McKinley's claim that the government engaged in four instances of prosecutorial misconduct. A prosecutor's statements will justify reversal of a conviction only if they undermined the fairness of the trial and contributed to a miscarriage of justice. United States v. Jacoby, 955 F.2d 1527, 1541 (11th Cir. 1992). To establish prosecutorial misconduct, (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant. Merrill, 513 F.3d at 1307. As we've noted, a defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different. Id.

The "mere utterance" of words such as "jail," "prison," or "arrest" without regard to context or circumstance does not necessarily constitute reversible error. United States v. Veteto, 701 F.2d 136, 139-40 (11th Cir. 1983). Rather, what matters is whether the remark was a constant reminder of the accused's condition and a continuing influence throughout the trial that presented an unacceptable risk of impermissible factors corrupting the jury's judgment. United States v. Villabona-Garnica, 63 F.3d 1051, 1058 (11th Cir. 1995) (holding that a brief comment referencing the defendant's imprisonment did not prejudice the jury).

A prosecutor's statements during closing argument require reversal only if the comments are both improper and prejudicial to a substantial right of the defendant in light of the particular facts of the case and in the context of the entire

record. Jacoby, 955 F.2d at 1540-41 (holding that a prosecutor's statements during closing arguments that inconsistencies "were so glaring and so clear" that "[s]omeone is committing perjury" were neither improper nor prejudicial, albeit "colorful and perhaps flamboyant"). Because the statements of counsel are not evidence, the district court may rectify improper prosecutorial statements by instructing the jury that only the evidence in the case is to be considered. Id. The prosecutor is entitled to make a fair response to the defense counsel's arguments. United States v. Hiett, 581 F.2d 1199, 1204 (5th Cir. 1978).[2]

McKinley argues that taken together, these four instances of prosecutorial misconduct denied him a fair trial: (1) eliciting testimony of other crimes during cross-examination; (2) alluding to McKinley's prior drug conviction; (3) referencing McKinley's prior time in prison; and (4) referencing "smoke and mirrors" and "red herrings" during its rebuttal of his closing argument. However, our review of the record reveals that the government did not plainly engage in prosecutorial misconduct because these comments and actions were not improper. Moreover, given the substantial evidence of McKinley's guilt, he has not shown that, but for these four instances, his verdict would have been different.

We also are unconvinced by McKinley's claim that the district court abused its discretion in denying his motion to continue that he submitted before trial and

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

his oral request to continue that he submitted before jury selection. It is the defendant's burden to demonstrate that the denial of a motion to continue was an abuse of discretion and that it produced specific substantial prejudice. United States v. Smith, 757 F.2d 1161, 1166 (11th Cir. 1985). The following factors are relevant in assessing claims that counsel did not have adequate time to prepare: the time available for preparation, the likelihood of prejudice from denial, the accused's role in shortening the effective preparation time, the degree of complexity of the case, and the availability of discovery from the prosecution. United States v. Uptain, 531 F.2d 1281, 1286 (5th Cir. 1976).

To the extent McKinley challenges the district court's denial of his pretrial motion to continue, we are precluded from reviewing it because McKinley invited the error by insisting on going to trial. To the extent he challenges his oral motion to continue, the district court had previously provided him with ample opportunity to receive a continuance. As the record reveals, the court did not previously grant a continuance because McKinley insisted on going to trial that Monday, in spite of his attorney's lack of preparation. Even after McKinley requested more time on the morning of the trial, the district court accommodated his request by offering an extended lunch break so that he could discuss his case with his attorney. In any event, McKinley has not identified any specific, substantial prejudice resulting from the denial, instead resorting to generalized arguments about the shortness of

14

preparation time and the severity of the sentences he faced.  On this record, the district court did not abuse its discretion in denying a continuance.

Likewise, we are unpersuaded by McKinley's argument that the admission of his prior bad acts and the improper impeachment of his witness cumulatively denied him a fair trial.  Under the cumulative error doctrine, an aggregation of plain errors failing to necessitate reversal and harmless errors can yield a denial of the constitutional right to a fair trial, which calls for reversal.  United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005), abrogated on other grounds by Davis v. Washington, 547 U.S. 813, 821 (2006).  The harmlessness of cumulative error is determined by conducting the same inquiry as for individual error, under which we look to see whether the defendant's substantial rights were affected.  Id.  The total effect of the errors on the trial will depend, among other things, on the nature and number of the errors committed, their interrelationship, their combined effect, how the district court dealt with the errors as they arose, the strength of the government's case, and the length of trial.  Id.

In this case, there was no cumulative error with regard to the district court's evidentiary rulings and denials of McKinley's motions for mistrial.  Not only has he failed to show any reversible error, as we've discussed above, but he has failed to demonstrate or explain how the aggregate effect of these errors substantially influenced the outcome of his trial.

15

We likewise disagree with McKinley's claim that the district court erred in applying a two-level enhancement for obstruction of justice based on his untruthful testimony and his attempts to procure false exonerating letters during recorded jailhouse phone calls.  When applying this enhancement, a district court should make specific findings as to each alleged instance of obstruction by identifying the materially false statements individually.  United States v. Arguedas, 86 F.3d 1054, 1059 (11th Cir. 1996).  However, a general finding that an enhancement is warranted suffices if it encompasses all of the factual predicates necessary for a perjury finding.  United States v. Singh, 291 F.3d 756, 763 (11th Cir. 2002).

> Under U.S.S.G. § 3C1.1, a defendant receives a two-level enhancement if:
>
> [T]he defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and . . . the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense[.]

U.S.S.G. § 3C1.1.

A defendant may obstruct justice by committing perjury during his trial. Singh, 291 F.3d at 763.  Perjury is defined as false testimony concerning a material matter made with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.  Id.  Testimony concerns a material matter if it would tend to influence the jury's consideration of the matters at hand if it were believed.  Id.  This materiality requirement is a low one.  United States v.

Dedeker, 961 F.2d 164, 167 (11th Cir. 1992).  The district court may conclude that a defendant's testimony is false when it is irreconcilable with the record.  United States v. Williams, 627 F.3d 839, 845 (11th Cir. 2010).  A defendant may also obstruct justice by "threatening, intimidating, or otherwise unlawfully influencing a . . . witness . . . directly or indirectly, or attempting to do so."  U.S.S.G. § 3C1.1, comment. (n.4(a)).  Encouraging a potential witness to lie is considered "unlawfully influencing" for purposes of an obstruction enhancement.  See United States v. Amedeo, 370 F.3d 1305, 1319 (11th Cir. 2004).

Here, the district court did not clearly err in determining that McKinley's testimony that he had not bled on the night of the kidnapping was perjurious, since his testimony contradicted the testimony of three witnesses, all of whom said he had been covered in blood, as well as the DNA evidence that identified blood in the car as his.  Nor did the district court clearly err in finding that McKinley's attempt to influence potential witnesses to write letters declaring his innocence -- which he admitted to at trial -- supported the obstruction enhancement.  Moreover, contrary to McKinley's claim, the district court identified each material false statement individually and made specific factual findings for each.  Accordingly, the court did not clearly err in imposing an obstruction enhancement.

We also are unpersuaded by McKinley's claim that his prior Florida convictions for controlled-substance offenses were not controlled-substance

17

offenses for career-offender purposes.  For a defendant to be a career offender, he must have at least two prior felony convictions for a controlled substance offense. U.S.S.G. § 4B1.1(a).  A "controlled substance offense" is "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense."  Id. § 4B1.2(b).

Under Florida law, it is a crime to "sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance."  Fla. Stat. § 893.13(1)(a).  We have determined that a prior conviction under Fla. Stat. § 893.13(1) is a "controlled substance offense" under U.S.S.G. § 4B1.2(b) and, therefore, qualifies as a predicate felony for the purposes of the career offender enhancement under U.S.S.G. § 4B1.1(a).  United States v. Smith, 775 F.3d 1262, 1267-68 (11th Cir. 2014).  We held that no element of mens rea with respect to the illicit nature of the controlled substance is expressed or implied in the Guidelines' definition of a controlled substance offense.  Id. at 1267.

Under our binding precedent, the district court did not err in determining that McKinley's prior convictions under Fla. Stat. § 893.13(1) were controlled substance offenses for purposes of the career offender enhancement.  See id. at

1267-68; Vega-Castillo, 540 F.3d at 1236.  Accordingly, the district court properly applied a career-offender enhancement.

Finally, we reject McKinley's argument that his sentences of life imprisonment were substantively unreasonable.  In reviewing the "'substantive reasonableness of [a] sentence imposed under an abuse-of-discretion standard,'" we consider the "'totality of the circumstances.'"  Pugh, 515 F.3d at 1190 (quoting Gall v. United States, 552 U.S. 38, 51 (2007)).  The district court must impose a sentence "sufficient, but not greater than necessary to comply with the purposes" listed in 18 U.S.C. § 3553(a).[3]  "[W]e will not second guess the weight (or lack thereof) that the [court] accorded to a given [§ 3553(a)] factor ... as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented."  United States v. Snipes, 611 F.3d 855, 872 (11th Cir. 2010) (quotation, alteration and emphasis omitted).  We will vacate a sentence only if the district court (1) did not account for a factor that should have received significant weight, (2) gave significant weight to an irrelevant or improper factor, or (3)

---

[3]    The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

committed a clear error of judgment in balancing the sentencing factors. United States v. Irey, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc).

While we do not automatically presume a sentence falling within the guideline range to be reasonable, we ordinarily expect that sentence to be reasonable. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). The party challenging the sentence bears the burden to show it is unreasonable. United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010).

McKinley's two life sentences are not substantively unreasonable. For starters, life sentences are within his guidelines range, which means that we expect them to be reasonable. In addition, the record reveals that the district court considered mitigating factors, such as McKinley's difficult youth, past sexual abuse, mental health issues, and his potential to obtain a profession and become a productive member of society. It also considered Wilson's prior voluntary prostitution and the small scale of McKinley's sex-trafficking scheme as mitigating factors. After looking at the nature and circumstances of the offense, the court determined that McKinley's victimization of Wilson was a significant aggravating factor, as well as McKinley's extensive prior criminal history. It then weighed the aggravating and mitigating factors and determined that life sentences were fair and just. In short, the district court properly weighed all the relevant factors, and did

20

not commit a clear error in judgment when it balanced the mitigating and aggravating factors. We affirm McKinley's convictions and sentences.

**AFFIRMED**.