[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10755

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

RALPH KEVIN TOVAR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20205-DPG-1

_____

Before WILLIAM PRYOR, Chief Judge, and GRANT and LUCK, Circuit Judges.

GRANT, Circuit Judge:

Ralph Tovar had quite the defense to charges of attempted sex trafficking of a minor: Though he paid $550 in exchange for a hotel key, he was not actually planning to have sex with the thirteen-year-old and fifteen-year-old he thought were behind the door. Instead, inspired by an action movie, he was going to "save" the girls. As Tovar himself said on the stand, this was not "a well thought-out plan." Nor was it a well-thought-out defense. The jury didn't buy it and found him guilty—likely because of the overwhelming evidence that he did, in fact, intend to purchase sex with two underage girls.

Tovar now appeals, dropping the I-was-actually-saving-the-girls argument and adding three new ones. *First*, he says that the government did not sufficiently prove that his conduct was "in or affecting" interstate commerce, as required by the child-sex-trafficking statute. *See* 18 U.S.C. § 1591(a)(1). *Second*, he contends that the district court gave the jury an unlawful instruction. And *third*, he accuses the government of engaging in prosecutorial misconduct during its closing argument. But these new arguments are no more successful than the original, and we affirm his conviction.

**I.**

In early 2022, federal agents placed fake advertisements for young girls on MegaPersonals, a website known for sex trafficking.

Ralph Tovar responded to one such ad shortly after midnight, texting that he was looking for a "unique experience." When agents did not immediately respond, Tovar tired of waiting and called the number—no answer. Undeterred, he fired off another text message at 2:01 a.m.: "Is those girls available sometime tonight or tomorrow?" Still no reply. After waiting nine hours, he sent the same message again.

Federal agents finally responded about three hours later, explaining that they had "two young, beautiful girls available." One was fifteen and the other thirteen, they told him—but Tovar did not object. To the contrary, he asked how late the girls would be available and said he wanted to "make an appointment." He also requested photos and explained that he was interested in "two girls at the same time." The agents did not send the photos he requested, but reiterated that the two girls were "15 years old and 13 years old" and reassured him that they were "super pretty and are up for almost anything." Tovar said okay and asked one more question: "You are not working for the law or something. Right?" To that the agents replied, "no, I take my business very serious so you better not be a cop."

Apparently satisfied, Tovar responded that he too was "not a cop" and noted that he would "bring a lot of cash" to the meet-up spot. Agents set the price at $400 an hour and added that the girls would "do everything and anything but the 13-year-old doesn't do anal. Is that okay?" Tovar chided the agents for talking about sex acts over text, but confirmed that he was "okay" with this

restriction.  He continued: "I might text from [a] different number because you kind [of] messed up by texting about anal.  This is very confidential because of their age already."

Before switching to the new number, Tovar asked if there were any extra "services" that he could buy for "more cash." Indeed there were—unprotected sex, anal sex (with the fifteen-year-old), and pictures of the encounter were all on the table for an extra $50 each.  Tovar opted for all three.  He confirmed that the total price would be $550 and again reassured the federal agents that he was "not a cop."

Tovar and the agents planned to meet at 9 p.m. at a hotel in Doral, Florida, and he stopped at a bank on the way to withdraw the $550 he needed for sex and all the extras.  Money in hand, Tovar met with an undercover agent in the hotel parking lot.  During their conversation, the agent told him—again—that the girls were thirteen and fifteen.  Content, Tovar handed the agent $550 in exchange for a hotel room key.  Agents arrested him shortly after the trade.

A grand jury indicted Tovar for two counts of attempted sex trafficking of a minor and one count of attempted coercion and enticement of a minor to engage in sexual activity.  *See* 18 U.S.C. §§ 1591(a)(1), (b)(1), (b)(2); 1594(a); 2422(b).  He pleaded not guilty and offered what we will generously call a creative defense: that his actions were inspired by Liam Neeson's character in the movie *Memory*, and he was in fact trying to save the girls from true predators.  Tovar twice moved for a judgment of acquittal on the

ground that the government did not prove that he knowingly enticed or solicited the underage girls. The court denied the motions and sent the case to the jury—guilty on all counts.

Tovar now appeals, making three arguments. *First*, he says the district court erred in denying his renewed motion for a judgment of acquittal because his conduct did not satisfy the interstate-commerce element of the child-sex-trafficking statute. *See* 18 U.S.C. § 1591(a)(1). *Second*, he says the district court's jury instruction was plainly erroneous because it wrongly equated the use of a facility of interstate commerce with per se satisfaction of the interstate-commerce element in § 1591. *Third*, and finally, he says the government committed prosecutorial misconduct in its closing argument when it told the jury that the interstate-commerce element was "really not in dispute" and so it was "not something you have to decide." We disagree three times over.

## II.

The first question we consider here, whether Tovar acted "in or affecting" interstate commerce, introduces a still earlier one: should that challenge be reviewed de novo or for plain error? The answer depends on whether the interstate-commerce element in § 1591(a)(1) is "jurisdictional"—that is, whether it "defines the court's authority to hear a given type of case." *See United States v. Morton*, 467 U.S. 822, 828 (1984). If the requirement is jurisdictional, our review is de novo because a court is always bound by its jurisdictional limitations. *See United States v. Clay*, 355 F.3d 1281, 1285–86 (11th Cir. 2004); *Amaya-Artunduaga v. U.S. Att'y.*

*Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006). If it is not, plain-error review applies because Tovar failed to raise this objection in the district court. *See Alikhani v. United States*, 200 F.3d 732, 734–35 (11th Cir. 2000).

Congress defines the subject-matter jurisdiction of the lower federal courts by statute, and has given district courts jurisdiction over "all offenses against the laws of the United States." 18 U.S.C. § 3231; *see United States v. Grimon*, 923 F.3d 1302, 1305 (11th Cir. 2019); U.S. Const. art. III § 1. So long as an indictment "charges the defendant with violating a valid federal statute," it "invokes the district court's subject-matter jurisdiction." *United States v. Brown*, 752 F.3d 1344, 1354 (11th Cir. 2014).

That rule seems straightforward enough, but for decades courts "sometimes erroneously conflated" subject-matter jurisdiction with the merits of the case, all too often treating the "reach" of a statute as a jurisdictional question. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006) (quotation omitted); *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 253–54 (2010). That move was troubling—subject-matter jurisdiction "presents an issue quite separate from the question whether the allegations the plaintiff makes entitle him to relief." *Morrison*, 561 U.S. at 254. So starting in the early 2000s, the Supreme Court sought to discipline the federal courts' "less than meticulous" analysis when it came to subject-matter jurisdiction. *See Arbaugh*, 546 U.S. at 511. To put an end to these "drive-by jurisdictional rulings," the Court adopted a "readily administrable bright line": "when Congress does not rank

a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional." *Id.* at 511, 516 (quotation omitted). Simply put, if Congress doesn't say it is jurisdictional, then it isn't. *See McIntosh v. United States*, 144 S. Ct. 980, 987 (2024).

Applying that rule here, we have little difficulty concluding that the interstate-commerce element in § 1591(a) is nonjurisdictional. Congress did not count that element as a limit on a federal court's power to hear a given case. *See Arbaugh*, 546 U.S. at 516. Because the sex-trafficking statute, § 1591(a), "does not expressly refer to subject-matter jurisdiction or speak in jurisdictional terms," it cannot be jurisdictional. *See McIntosh*, 144 S. Ct. at 987 (quotation omitted). Instead, § 1591(a) restricts the statute's substantive reach, imposing a limitation on what conduct the statute covers. And "to ask what conduct" a statute covers "is to ask what conduct [it] prohibits, which is a merits question." *Morrison*, 561 U.S. at 254. Section 1591(a) "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982). That means the interstate-commerce question in any § 1591(a) case is not whether a federal court has the power to adjudicate the dispute, but whether the statute covers the defendant's conduct.

That conclusion makes sense. The interstate-commerce element in § 1591(a) does not strike at a federal court's "power to adjudicate" child-sex-trafficking cases. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (emphasis deleted). Instead, it

requires the government to prove an interstate-commerce nexus to secure a conviction.  If the government cannot do so, then the defendant will be acquitted—but an acquittal does not strip the federal courts of their ability to decide the case.  *See Alikhani*, 200 F.3d at 735; *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010) (contrasting "true jurisdictional conditions" with "nonjurisdictional limitations on causes of action").  The interstate-commerce element gives Congress the power to regulate the conduct, and the subject-matter jurisdiction statutes give federal courts the power to decide the case.  So "the question of who should win under substantive law remains distinct from the court's adjudicative authority."  Howard M. Wasserman, *The Demise of "Drive-by Jurisdictional Rulings*,*"* 105 Nw. U. L. Rev. 947, 950 (2011).  To hold otherwise for § 1591(a) would create great tension with the "firmly established" rule in the civil context that "the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction."  *Steel Co.*, 523 U.S. at 89.

The mine run of our cases have come to the same conclusion: "a district court faced with an insufficient interstate-commerce nexus" does not lose "subject-matter jurisdiction of the case."  *See Alikhani*, 200 F.3d at 735.  Take *United States v. Viscome*, 144 F.3d 1365 (11th Cir. 1998).  There, we point-blank stated that a defendant's challenge to "the sufficiency of the government's evidence regarding the interstate nexus element" was "non-jurisdictional."  *Id*. at 1370.  Or consider the half-century-old case of *United States v. Hyde*, where Judge Wisdom repeatedly described the interstate-commerce element in the Hobbs Act as a "statutory

23-10755                Opinion of the Court                9

requirement." *See* 448 F.2d 815, 836, 839, 842 (5th Cir. 1971).[1]  He explained that these requirements are important because they enable Congress to declare that something "can be a federal crime"—not because they divest federal courts of their jurisdiction. *See id.* at 839 n.34.

To be sure, in *Hyde* and in other cases, we have sometimes referred to an interstate-commerce requirement as a "jurisdictional element" of an offense.  *See, e.g., id.* at 839; *United States v. McAllister*, 77 F.3d 387, 390 (11th Cir. 1996).  But an interstate-commerce element is not "jurisdictional" in the sense of the word that matters here—it says nothing about whether "the *district court* has subject matter jurisdiction or authority to adjudicate the case."  *Grimon*, 923 F.3d at 1306.

So why do we belabor the point?  The unhappy fact is that our cases have not been consistent.  We have sometimes mistakenly suggested that a statutory interstate-commerce element strikes at the federal courts' subject-matter jurisdiction.  In *United States v. Clay*, for example, a panel of this Court reasoned that de novo review on a challenge to the sufficiency of the interstate-commerce evidence was required because "the 'possess in or affecting commerce' portion of § 922(g)(1) is a jurisdictional element of that criminal offense."  355 F.3d at 1286.

---

[1] Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Other decisions from our Circuit can be read to support the same proposition. We have suggested, for example, that an interstate-commerce nexus was required to "establish jurisdiction." *See United States v. Perrin*, 580 F.2d 730, 735 (5th Cir. 1978). And we have noted in passing that the government must provide sufficient evidence that an interstate-commerce requirement was met "to establish federal jurisdiction." *See United States v. Smith*, 749 F.2d 1568, 1570 n.2 (11th Cir. 1985).

In a situation like this—where Circuit authority is in conflict—"a panel should look to the line of authority containing the earliest case because a decision of a prior panel cannot be overturned by a later panel." *Arias v. Cameron*, 776 F.3d 1262, 1273 n.8 (11th Cir. 2015). Here, the earliest case we can identify is *Hyde*, in which Judge Wisdom explained that interstate-commerce elements empower Congress, not enfeeble courts. *See* 448 F.2d at 839 n.34. They are what allow Congress to, for example, "declare that common law extortion can be a federal crime," or, as relevant here, outlaw trafficking of children for sex. *See id.;* 18 U.S.C. § 1591. Because the *Hyde-Viscome-Alikhani* line of precedent predates any case holding that the government's failure to prove an interstate-commerce element divests a federal court of its subject-matter jurisdiction, that line of precedent prevails.[2] *See Arias*, 776 F.3d at

---

[2] There is at least a colorable argument that the Supreme Court's clarity in adopting the "bright line" that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional" means that cases like *Clay*, *Perrin*, and *Smith* are no longer good law. *See Arbaugh*, 546 U.S. at 516. But we need not address that point

1273 n.8.  That means the interstate-commerce requirement here is a statutory element that the government must prove to secure a conviction—not a jurisdictional one that saps a federal court's authority to hear a case.  Our review of Tovar's challenge on that front is therefore for plain error since he did not raise the issue in the district court.[3]

## III.

Preliminaries satisfied, we now review the in-or-affecting-commerce question for plain error.  To meet that standard, Tovar must show that (1) an error occurred, (2) the error was obvious, and (3) the error affected his substantial rights.  *See Rosales-Mireles v. United States*, 585 U.S. 129, 134–35 (2018).  Even then, we exercise our discretion to correct the error only if it seriously impaired the "fairness, integrity or public reputation of judicial proceedings." *Id*. at 135 (quotation omitted).

Tovar says the government did not prove that his conduct was "in or affecting" interstate commerce because he merely used two facilities of interstate commerce.  The phrase "in commerce" refers to both the "channels within which people and goods move through the flow of commerce" and the "instrumentalities used to

---

because there is no tension between the Court's teachings and our prior-panel-precedent rule in this case.

[3] We reject Tovar's alternative argument that we should review his challenge de novo because he made a "general" challenge to the adequacy of the evidence.  Our Circuit has never adopted that rule, and we decline to do so today. *See United States v. Baston*, 818 F.3d 651, 663–64 (11th Cir. 2016).

facilitate that movement." *United States v. Ballinger*, 395 F.3d 1218, 1233 (11th Cir. 2005) (en banc). These instrumentalities include things like the internet and cell phones. *See United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004) (internet); *United States v. Evans*, 476 F.3d 1176, 1180 (11th Cir. 2007) (cell phones). Tovar used both when he tried to purchase sex with two minors.

True, neither Tovar nor his (fictional) intended victims ever crossed state lines. But we have already said that "a defendant whose illegal acts ultimately occur intrastate still acts 'in commerce' if he uses the channels or instrumentalities of interstate commerce to facilitate their commission." *See United States v. Baston*, 818 F.3d 651, 664 (11th Cir. 2016) (quotation omitted). And Tovar's use of the internet and his cell phone "facilitated" his attempted trafficking because he needed these instrumentalities to arrange the transaction—sex with a thirteen-year-old and a fifteen-year-old. *See id.* He otherwise would never have seen the advertisement in the first place, let alone have been in a position to act on it. So by using these instrumentalities of interstate commerce, he placed himself firmly "in commerce." *See id.*

This conclusion is not a new one—our Court has all but said so already. In *United States v. Baston*, another § 1591(a) case, the defendant communicated with his victim "by phone, text message, and Instagram"; "convinced her to cross state lines on a bus"; "advertised her services" on a website known for sex trafficking; and "stayed with her in various hotels." *Id.* We explained that "[*a*]*ny one of these* is sufficient to prove that Baston's conduct was

'in commerce.'" *Id*. (emphasis added). Because Tovar concocted his plan by text message, *Baston* governs, and that means his conduct was "in commerce."

Tovar insists that this part of *Baston* is mere dicta because the facts there "clearly went beyond the defendant's intrastate use of a cellphone to communicate with the victim." But nowhere does *Baston* suggest that its holding is so limited. At the very least, the quoted language is an alternative holding—and it is "well-established in this Circuit that alternative holdings are as binding as solitary holdings." *United States v. Files*, 63 F.4th 920, 926 (11th Cir. 2023) (quotation omitted).

On top of all that, consider *United States v. Evans*, where we said that a defendant's use of a cell phone "alone, even without evidence that the calls he made were routed through an interstate system," was sufficient to satisfy a similar statute's interstate-commerce requirement. 476 F.3d at 1180–81. And we are not alone in that view—several of our sister circuits agree that the intrastate use of a telephone is enough to meet a statute's interstate-commerce element. *See, e.g.*, *United States v. Gilbert*, 181 F.3d 152, 158–59 (1st Cir. 1999); *United States v. Weathers*, 169 F.3d 336, 341–42 (6th Cir. 1999). In short, because Tovar used both his cell phone and the internet to arrange sex with minors, his conduct qualifies as "in commerce"—whether or not he or the victims physically crossed state lines. No error means no plain error, and we reject Tovar's interstate-commerce challenge.

## IV.

Tovar next objects that the district court's jury instruction wrongly treated the use of a facility of interstate commerce as satisfying the interstate-commerce element. Not so.

After giving the standard pattern jury instruction for § 1591, the district court added a modified instruction aimed at clarifying the lack of scienter requirement for the interstate-commerce element. It instructed the jury that "the Government need not prove that the Defendant knew his conduct involved the use of any facilities of interstate commerce *and hence* occurred 'in' interstate commerce or that he knew that his conduct would 'affect' interstate commerce. It is sufficient that the Government prove that the Defendant's conduct did in fact occur 'in' interstate commerce or that the natural consequences of the Defendant's conduct would 'affect' interstate commerce" (emphasis added). When asked if there was "any objection" to this language at trial, Tovar said no.

He has now changed his mind. To Tovar, the instruction was erroneous because by using the phrase "and hence" it ever so subtly equated the use of interstate-commerce facilities with "*per se* satisfaction of" § 1591(a)(1)'s interstate-commerce element. Because Tovar accepted this jury instruction at trial, our review is again for plain error. *See Rosales-Mireles*, 585 U.S. at 134–35. But again there is no error at all.

As we have just explained, our decisions in *Baston* and *Evans* are best read to decide that a defendant's intrastate crimes qualify

as "in commerce" when he uses the instrumentalities of interstate commerce to facilitate their commission. *See Baston*, 818 F.3d at 664; *Evans*, 476 F.3d at 1180–81. The jury instruction aligns with that principle.

## V.

Finally, Tovar says the government committed prosecutorial misconduct in its closing statement by taking a crucial issue off the table. Again we disagree.

The heart of the dispute at trial was whether Tovar acted "knowingly." Was his plan to have sex with the underage girls, or to save them? Before addressing that issue during its closing argument, the government stated that "there are many things that are really not in dispute in this case. One of them is the part about interstate commerce that you heard earlier. You have seen a stipulation to that. You have seen and heard ample evidence that a cell phone was used in all of these communications so that is not something you have to decide." So, the government continued, the "only thing left" for the jury to decide was whether Tovar "knew what he was doing and intended to follow through with the sex act."

Tovar now accuses the government of misconduct by misleading the jury into thinking that he stipulated away the interstate-commerce element in § 1591(a)(1) when, in fact, he stipulated only that he used two instrumentalities of interstate commerce. Tovar did not make this objection at trial, so our review

is once again for plain error. *See Rosales-Mireles*, 585 U.S. at 134–35. Once again, we find none.

To start, the government did not say that Tovar conceded that the interstate-commerce element in § 1591(a)(1) was met. What it did say was that the element was "really not in dispute"— which it was not. After all, Tovar stipulated that he used two facilities of interstate commerce, and there was "ample evidence that a cell phone was used." So as a practical matter, the interstate-commerce question was irrelevant at the trial—the crux of the case was whether Tovar intended to save the girls or to have sex with them. There was never any suggestion that the interstate-commerce element in § 1591(a)(1) had not been met as a factual matter. In the end, the interstate-commerce part of the case was— for lack of a better phrase—"really not in dispute."

But even if part of the closing argument was improper, "relief is available to rectify only plain error that is so obvious that failure to correct it would jeopardize the fairness and integrity of the trial." *United States v. Feldman*, 936 F.3d 1288, 1302 (11th Cir. 2019) (quotation omitted). Tovar cannot meet that bar. He cannot show "a reasonable probability that, but for the remarks, the outcome of the trial would have been different" because the government presented uncontested evidence at trial that Tovar used two instrumentalities of interstate commerce, withdrew money from a bank to pay for underage sex, and was arrested in a hotel parking lot after receiving a room key. *Id.* That evidence was more than sufficient for a jury to conclude that Tovar's crimes were

23-10755                 Opinion of the Court                    17

"in or affecting" interstate commerce.  And besides, the judge instructed the jury that "what the attorneys say" during closing arguments "is not evidence and you should not consider it as evidence."  An instruction like that one "helps to mitigate the risk that the jury may have been misled by the government's statements."  *United States v. Maradiaga*, 987 F.3d 1315, 1326 (11th Cir. 2021).

⋆     ⋆     ⋆

Thankfully the girls targeted by Tovar were not real—though plenty of victims are.  The evidence plainly showed what Tovar intended to do, and that his actions occurred in interstate commerce.  A jury believed that evidence.  Because Tovar cannot show that his trial was infected with any plain error, we **AFFIRM**.